HERBERT FISEL *v.* SAMUEL JAY YODER AND
PATRICIA ANN YODER.

[No. 3-1273A167. Filed December 26, 1974. Rehearing denied January
21, 1975. Transfer denied September 29, 1975.]

*Kenneth A. King,* of Kendallville, for appellant.

*John D. Ulmer, George E. Buckingham, Yoder, Ainlay, Ulmer & Buckingham,* of Goshen, for appellees.

STATON, J.—Herbert Fisel sold his Elkhart County farm to Samuel and Patricia Yoder on a conditional sales contract for $42,000.00. Later, a fire destroyed the barn, and the Yoders received an insurance check for $10,200.00 payable to them and Fisel. With the intention of having the $10,200.00 applied to the contract balance, the Yoders endorsed the insurance check and mailed it to Fisel. By return mail, the Yoders received a notice from Fisel that they had breached the contract in several ways: (1) failure to carry adequate insurance; (2) making major improvements without written consent. The Yoders were given ten days to cure these breaches or suffer forfeiture. Instead, the Yoders tendered payment in full and demanded evidence of good title. Later, in a second letter, Fisel returned the insurance check and stated that the check would not be endorsed unless a new barn was constructed.

The Yoders filed a complaint for specific performance of the contract, and Fisel filed a counterclaim for forfeiture and possession. The trial court found for the Yoders on their complaint and against Fisel on his counterclaim. Both, the Yoders and Fisel, filed motions to correct errors. Fisel's Motion to Correct Errors raises two issues on appeal for our review:[1]

Issue One: Was Fisel entitled to forfeiture?

Issue Two: Was Fisel entitled to costs and attorney fees under Provision Twelve of the contract?

The Yoders' Motion to Correct Errors raises one issue on appeal:

Issue Three: Was the trial court's judgment in error when it restricted payment in full of the contract balance to February 1 of each year instead of February 1 and August 1 of each year?

We conclude that Fisel was not entitled to forfeiture, costs or attorney fees. We further conclude that the Yoders were

---

1. Fisel also contends in his motion to correct errors that the judgment of the trial court is contrary to the evidence in several particulars regarding the trial court's finding against him on his counterclaim. This is a negative judgment and any contention that the judgment is not supported by the evidence or is contrary thereto presents nothing for consideration on appeal. *Goff* v. *Graham* (1974), 159 Ind. App. 324, 306 N.E.2d 758; *Lindenborg* v. *M & L Builders and Brokers, Inc.* (1973), 158 Ind. App. 311, 302 N.E.2d 816.

One of the issues argued by Fisel as being contrary to the evidence is that Fisel is entitled to a return of some insurance funds he turned over to the Yoders to make repairs. The trial court correctly made no finding as to this issue in its special findings of fact. The contract between the parties contains no mention of an insurance payment by Fisel to the Yoders for repairs. There is no express or implied demand for return of the unused portion of this insurance payment in Fisel's counterclaim. Although there is some evidence in the record that Fisel gave the Yoders a $185.00 insurance check to fix the roof of a chicken house and that only $65.54 was expended for replacement shingles, Fisel at no time before or after judgment made a motion to amend his counterclaim to conform to the evidence pursuant to Indiana Rules of Procedure, Trial Rule 15(B). Although this issue is not before this Court on appeal, we would point out that the record would not support a contention that this issue was tried by implied consent of the parties. As we stated in *Aldon Builders, Inc.* v. *Kurland* (1972), 152 Ind. App. 570, 284 N.E.2d 826, 832:

"A party is entitled to some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order. This is especially true where the new issue is not unequivocally clear by the evidence being submitted. . . ."

entitled to pay the contract balance in full on February 1 and August 1 during any calendar year of the contract. We correct the trial court's judgment accordingly, and we affirm.

## I.

### *Forfeiture*

The function of this Court in determining whether a negative judgment is contrary to law has been recently set out in *Link* v. *Sun Oil Company* (1974), 160 Ind. App. 310, 312 N.E.2d 126, 129 as follows:

> "In determining whether a negative judgment is contrary to law, this court, as an appellate tribunal, neither weighs the evidence nor resolves questions of credibility of witnesses, but considers only the evidence most favorable to the appellees, together with all reasonable inferences deducible therefrom. It is only where the evidence leads to but one conclusion and the trial court has reached an opposite conclusion that the decision of the trial court will be disturbed as being contrary to law. . . ."

Fisel asserts that the record conclusively establishes that the Yoders were in breach of Provisions Five and Seven of the contract entitling him to a forfeiture under Provision Twelve. These contract provisions are:

> "5. The Purchasers shall obtain insurance on the possession date and shall keep the premises insured in a satisfactory Insurance Company in an amount not less than the unpaid balance herein against fire, wind and what is commonly known as extended coverage, such insurance to be endorsed to the Vendor as his interests may appear. In the event the Purchasers fail to pay any taxes or insurance premiums when due, and to notify and give proof to the vendor of such payment, the Vendor shall have the option of either declaring this contract forfeited or of paying such sums as become due and unpaid, which amounts paid by the Vendor shall become a part of the unpaid principal sum and draw interest in the same per cent established.

> \* \* \*

> "7. It is understood and agreed that Purchasers shall keep the real estate herein concerned, as well as the improve-

ments now or hereafter located thereon, in as good repair as they now are with reasonable wear excepted, and shall not cause nor permit to be caused any waste upon said real estate during the life of this agreement. Purchasers shall not have the right of making any major improvements or alteration whatsoever to the premises herein concerned or the building now thereon without the prior written consent of Vendor, but the Purchasers shall have the right and duty to make necessary repairs and redecorations so as to keep said premises and the buildings thereon attractive in appearance. The Purchasers specifically have permission to remove a certain wall between the kitchen and dining room which has been discussed by the parties without further written consent.

\* \* \*

"12. In the event Purchasers violate any of the terms of this contract, Vendor shall have the right to declare this contract forfeited by mailing a registered letter to Purchasers at their last known address and the Purchasers shall have ten (10) days in which to rectify such breach of contract or the Vendor has the right to peaceable possession after such (10) days, retaining all monies paid as reasonable rent and liquidated damages for such use of the premises and such forfeiture, and it is further agreed and understood that Purchasers shall pay any and all reasonable costs and attorney fees for such forfeiture. Anything in this contract to the contrary notwithstanding, the Vendor shall have the right to sue the Purchasers for specific performance under this contract."

Under Provision Five, Fisel contends that the Yoders failed to carry adequate insurance equal to the unpaid balance due, to provide Fisel with a copy of the policy and to endorse the policy over to him. As to Provision Seven, Fisel contends that the Yoders made major improvements and alterations without his written consent. The trial court made the following special findings of fact on the insurance issue:

"4. That the Plaintiffs procured insurance on said premises on January 7, 1972 with Mennonite Mutual Aid Association and that the Plaintiffs showed said policy to the Defendant in February of 1972 and the Defendant did not object to the amount or type of coverage.

"5. That on March 18, 1972, the Plaintiffs acquired insurance coverage for the property with Farmers' Mutual Aid

Association of Goshen, Indiana, the same insurance carrier with which the Defendant had maintained coverage on said property during his last year of possession. That the said insurance policy listed the Defendant among those insured and the insurance company agreed to notify Defendant of his status under the policy.

"6. That at all times the amount of insurance coverage on the property purchased by the Plaintiff pursuant to the contract exceeded the amount of the unpaid balance of the principal on the contract and equaled or exceeded the insurance coverage of the property held by the Defendant on said property prior to January 7, 1972 and was the full insurable value of said improvement.

"7. That only after obtaining coverage with Farmers' Mutual Aid Association did the Plaintiffs cancel their policy with Mennonite Mutual Aid Association.

"8. That on February 12, 1973, a barn on the property was completely destroyed by fire. That pursuant to the insurance policy procured by the Plaintiffs, Farmers' Mutual Insurance Company issued a draft payable to the order of Plaintiffs and Defendant in the sum of Ten Thousand Two Hundred Dollars ($10,200.00) for the loss sustained. The Plaintiffs endorsed said draft of March 13, 1972 [1973] and forwarded it to the Defendant's attorney on March 22, 1972 [1973]. On April 29, 1973, Plaintiff's attorney received said draft back from the Defendant's attorney indicating that the Defendant demanded that the Plaintiffs build a new barn."

The following special findings of fact were made on the improvements and alterations issue:

"9. That during the possession of said property, the Plaintiffs have undertaken numerous steps to make the property cleaner, more productive and more attractive, including the following:

(a) remodeling of the bathroom in the dwelling house;

(b) removal and storage of windows in the house in order to increase ventilation;

(c) removal and storing of stanchions from the barns prior to its burning;

(d) burying the remains of the barn and the livestock which perished in the fire;

(e) temporarily removed and replaced and rerouted heat pipes in accordance with the remodeling of the bathroom;

(f) improve the condition of the chicken house by cleaning and residing;

(g) cleaning various fence rows and planting good and substantial crops on the land;

(h) painting portions of the interior of the dwelling house; and

(i) improving in general the condition of the property.

"10. That during the possession of said property, the Plaintiffs stored two automobiles for the purpose of retaining spare parts, such automobiles being placed in the woods in a position not visable from either the road or the dwelling house."

Under the Indiana Rules of Procedure, Trial Rule 52(A), this Court cannot set aside the findings unless they are clearly erroneous. *Grissom* v. *Moran* (1972), 154 Ind. App. 419, 290 N.E.2d 119. We will not burden this opinion with a detailed review of the testimony. We have read the record, and we cannot conclude that the findings of fact are clearly erroneous. Moreover, we conclude that the evidence does not lead to but one conclusion. *Link* v. *Sun Oil Company, supra.*

Even if the trial court had found a breach by the Yoders of Provisions Five and Seven as alleged, forfeiture would have been improper. In *Skendzel* v. *Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. denied* 94 S.Ct. 1421, 39 L.Ed.2d 476 (1974), the Supreme Court of Indiana held that in all but a few instances forfeitures of land sales contracts are improper and such contracts should be considered to be in the nature of secured transactions with foreclosure as the vendor's remedy rather than forfeiture. In *Skendzel* v. *Marshall, supra,* 301 N.E.2d at 650, the Supreme Court of Indiana set out the following examples of situations in which forfeiture might be appropriate:

". . . A forfeiture—like a strict foreclosure at common law—is often offensive to our concepts of justice and

inimical to the principles of equity. This is not to suggest that a forfeiture is an inappropriate remedy for the breach of all land contracts. In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises. Of course, in this latter situation, the vendee will have acquired very little, if any, equity in the property. However, a court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law."

See also *Tidd* v. *Stauffer* (1974), 159 Ind. App. 570, 308 N.E.2d 415 holding forfeiture to be improper. As in both *Skendzel* v. *Marshall* and *Tidd* v. *Stauffer, supra,* the Yoders had paid a substantial portion of the contract price. At the time of trial, they had made a $10,000.00 downpayment, one $1400.00 payment due on February 1, 1973 and two interest payments.

In the recent case, *Goff* v. *Graham* (1974), 159 Ind. App. 324, 306 N.E.2d 758, a cancellation of the contract and damages award was upheld. However, in that case there was evidence that the contract buyer failed to insure the properties as required by the contract, was in arrears, and had committed waste. The Yoders had at all times during their possession insured the property. They were not in arrears. Neighbors of the Yoders testified that the farm appeared to be in better condition since the Yoders took possession. There is no evidence that the improvements and alterations made by the Yoders endangered Fisel's security interest in the property. A forfeiture in this case would not have been "consonant with notions of fairness and justice under the law."[2]

---

2. Fisel urges this Court to find a forfeiture in his favor under the contract while at the same time arguing that he was not informed of

## II.

### Right to Costs and Attorney's Fees

Fisel's second contention of error is that the Yoders wrongfully brought their action for specific performance which would entitle him to recover his costs and attorney fees under Provision Twelve of the contract.

First, we cannot agree that the Yoders wrongfully brought an action for specific performance. On April 2, 1973, Fisel sent the Yoders a letter alleging nine separate breaches of contract which were to be corrected within 10 days. The Yoders tendered payment in full and requested evidence of good title. Fisel was under no duty to accept this premature tender since Provision Four of the contract provided for prepayment only on certain specified dates. *See McFarland* v. *Christoff* (1950), 120 Ind. App. 416, 92 N.E.2d 555; *cf. Morgan* v. *East* (1890), 126 Ind. 42, 25 N.E. 867. However, under Provision Thirteen of the contract, Fisel did have a duty to "make his proof of good title available for the inspection of the Purchasers prior to the final payment hereunder." Also, Fisel on April 26, 1973, returned the $10,200.00 insurance check refusing either to apply it to the contract balance or to endorse it to the Yoders unless the burned barn was rebuilt. Fisel's threat of forfeiture coupled with his refusal to provide evidence of title and to endorse the insurance check justified the Yoder's action for specific performance.

Secondly, Provision Twelve only provides for payment of "reasonable costs and attorney fees for forfeiture." The trial court specifically found that the Yoders had not breached the contract and that there was no right to declare a forfei-

the full content and meaning of the contract at the time he signed it. Fisel's argument seems to be that since he did not know what he was signing, equity should now enforce that signed writing to the letter. This argument is untenable. Fisel's counterclaim does not demand a rescission of the contract based on fraud or mistake and this issue is not before this Court. We deal only with the issue of forfeiture under the contract as raised by Fisel's Motion to Correct Errors.

ture. Therefore, Fisel was not entitled to costs and attorney's fees under the contract.[3]

## III.

### Right to Prepayment

The Yoders' first contention of error regarding prepayment is that Fisel waived delayed prepayment under Provision Four of the contract by attempting to declare a forfeiture. The Yoders cite no authority for this proposition. Waiver has been defined as the "intentional relinquishment of a known right; an election by one to forego some advantage he might have insisted upon." *Lafayette Car Wash, Inc.* v. *Boes* (1972), 258 Ind. 498, 282 N.E.2d 837, 839. We cannot construe Fisel's declaration of a forfeiture for alleged breaches of contract by the Yoders as an "intentional relinquishment" of his right to prepayment only on specified dates. Equity protects buyers only from unjustified forfeitures for minor breaches by limiting the seller's remedies, not by completely rewriting the parties' contract. Fisel's declaration of a forfeiture under Provision Twelve of the contract is not evidence of an intent to waive the delayed prepayment provision.

The Yoders' second contention of error regarding prepayment is that the trial court erred in not allowing prepayment on August 1, as well as February 1, of each year as provided by the contract. We agree. The pertinent part of the trial court's judgment states:

"IT IS FURTHER CONSIDERED, ADJUDGED AND DECREED BY THE COURT that the Plaintiffs shall have the right to pay the balance, principal and interest of said contract, in full to Defendant on February 1st of each

3. Fisel attempts to argue for the first time in his brief that even in the absence of a contract right, the trial court should have awarded him his attorney's fees. Any issues asserted to be errors which are not raised in the motion to correct errors are deemed waived on appeal. Indiana Rules of Procedure, Trial Rule 59 (G); *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160.

Calendar year hereafter, and demand a deed of conveyance. . . ."

The contract provisions concerning payment are as follows:

"1. The Purchasers agree to pay to Vendor a total consideration of Forty-two thousand ($42,000.00) dollars for the above described real estate to be paid as follows: Ten thousand ($10,000.00) dollars down upon the signing of this contract, receipt of which is hereby acknowledged by the Vendor; and the unpaid balance is to be paid as follows: Fourteen hundred ($1400.00) dollars due February 1, 1973; Fourteen hundred $1400.00) dollars due February 1, 1974; and commencing August 1, 1974, a payment shall be made in the sum of Eighteen Hundred twenty-five ($1,825.00) dollars with another like payment due on February 1, 1975, and each six (6) month interval thereafter. Interest shall be five (5%) per cent per annum computed from the date of possession and shall be paid semi-annually on February 1st and August 1st until all principal is paid and it shall be in addition to any principal above required.
"4. The Purchasers shall have the right to pay any additional sum in multiples as reflected by the amortization schedule set up for this contract on any payment date, thereby reducing the unpaid balance subject to interest."

Beginning with August 1, 1974, payments were to be due twice yearly on February 1 and August 1; therefore, the Yoders could pay off the entire balance on either of these dates. Pursuant to Indiana Rules of Procedure, Appellate Rule 15(M), we correct the pertinent part of the judgment set out above as follows:

"IT IS FURTHER CONSIDERED, ADJUDGED AND DECREED BY THE COURT that the Plaintiffs shall have the right to pay the balance, principal and interest of said contract, in full to Defendant on February 1st and August 1st of each Calendar year hereafter, and demand a deed of conveyance. . . ."

The judgment of the trial court should be and the same hereby is affirmed as corrected.

Hoffman, C.J. and Garrard, J., concur.

NOTE.—Reported at 320 N.E.2d 783.