## SANDRA J. REYNOLDS (NEUBAUER) *v.* LILA C. MILFORD

[No. 2-876A320. Filed May 3, 1978.]

*Franklin D. Shipman*, of Marion, for appellant.

*Richard R. Cook, Milford, Milford, Glickfield & Cook*, of Marion, for appellee.

LOWDERMILK, J. — This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the districts.

### STATEMENT OF THE CASE

Defendant-appellant Sandra J. Reynolds Neubauer (Reynolds) appeals from judgment entered in favor of plaintiff-appellee Lila C. Milford (Milford) in her action based upon a conditional real estate sales contract.

### FACTS

On July 3, 1968, Reynolds entered into a conditional real estate sales contract for the purchase of a certain lot in the City of Marion from Milford for the principal sum of $8,500.00. Reynolds made a down pay-

ment of $300.00 and agreed to pay monthly installments of $82.00, plus amounts for taxes and insurance, commencing August 1, 1968, with interest computed at the rate of ⅔% per month on the unpaid balance.

Reynolds made no payments after February 28, 1975. By that time Reynolds had paid to Milford $7,454.00, of which $2,242.37 represented payments on principal.

On April 22, 1975, Milford filed a complaint seeking termination of the contract, forfeiture of all payments made by Reynolds, recovery for delinquent installments and escrow amounts (for insurance and taxes) through April 1, 1975, and recovery for attorney fees.

After holding a preliminary hearing June 13, 1975, the trial court ordered Reynolds to vacate the premises immediately.

On April 20, 1976, the trial court entered judgment:

"* * *

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that plaintiff is the owner of the aforementioned described real estate and by virtue of defendant's breach of conditional sales contract between plaintiff and defendant is entitled to possession of such real estate and to forfeiture of all sums paid by defendant to plaintiff under such conditional sales contract.

It is further ordered and decreed that plaintiff recover of and from defendant the principal sum of Nine Hundred and Two Dollars ($902.00) representing delinquent monthly payments under the aforesaid conditional sales contract and the sum of One Hundred Seventy-Nine Dollars and Seventy-One Cents ($179.71) representing delinquent escrow payments for taxes and insurance and reasonable attorney fees in the sum of Three Hundred Fifty Dollars ($350.00), making a total recovery of One Thousand Four Hundred Thirty-One Dollars and Seventy-One Cents ($1,431.71).

* * *"

## ISSUES

Reynolds lists three issues for review:

1. Did the award of delinquent monthly installments and delinquent escrow payments constitute a penalty rather than liquidated damages?

2. Did the trial court err in ordering both termination of the contract and enforcement of its terms?

3. Is the provision for liquidated damages unconscionable?

Because of our holding as to the first issue, we do not consider the other assertions of error.

*Issue One*

The conditional real estate sales contract includes the following paragraph:

"7. It is expressly understood and agreed that the title, both legal and equitable, to said premises will remain in the sellers with the full right to transfer, sell and encumber said premises subject to the rights of the buyers herein, and no interest whatsoever shall pass unto the buyers until said deed is delivered; that *should the buyers fail to make the payments when due, or within one month thereafter, or perform any term or conditions herein promptly, time being of the essence of this contract, then in that event the sellers, at their option, shall have full right to declare the unpaid balance immediately due and payable, or, at its option, shall have full right to terminate this contract and receive from the buyers immediate, peaceable possession of said premises and any right or interest of the buyers shall terminate and become void without notice or demand, notice and demand being expressly waived by the buyers,* which option the sellers shall exercise by giving ten (10) days written notice thereof to the buyers, or their heirs, successors or assigns, by the United States mail at the premises; *the seller shall retain all sums of money paid,* repairs, additions, improvements, and fixtures hereafter added by the buyers *and in addition the sellers shall be entitled to all past due monthly payments, taxes and insurance premiums as of the expiration date of said written notice as rent for the use and occupancy of said real estate, as liquidated damages for trouble, disappointment and loss of time and investment*; the sellers shall have no duty to rebuild or repair of said premises in the event of destruction or damage from any cause; the acceptance of any payment or performance of any condition late shall not constitute a waiver or modification of any provision of this agreement; the seller shall have the full right to enter in person or by agent for the purpose of inspection, making repairs and stopping waste to the premises without notice, notice being expressly waived by the buyers; the sellers have the full right to pay and add to the

unpaid balance hereof any sum expended by them that is an obligation of the buyers under the terms of this contract, and the same shall draw interest at the above mentioned rate; the buyers shall pay all attorney fees, reasonable rent for any holdover after the forfeiture of this contract, expenses and costs of the sellers necessary in obtaining performance of this agreement or possession of said premises; and all terms, conditions, promises and agreements herein are equally binding on the heirs, successors, and assigns of the parties hereto." (Our emphasis)

Reynolds contends that the contract imposes a penalty rather than liquidated damages.

The paragraph set forth above incorporates several provisions offensive to generally accepted principles of fairness and equity.

First, Milford clings to equitable title, although our Supreme Court recognizes that equitable title vests in buyers upon execution of a conditional land contract.[1] While Milford claims equitable title, she imposes upon Reynolds certain obligations and risks ordinarily borne by the holder of equitable title: e.g., Reynolds must pay taxes on the property, and Reynolds assumes the risk of loss in the event of destruction of the premises.

Secondly, Milford gives herself the right to retake possession of the property and retain all sums of money paid by Reynolds if Milford elects to terminate the contract. Additionally, Milford gives herself the right to collect all delinquent monthly installments, taxes, and insurance premiums. The result is that Reynolds must cure her default but relinquish the property.

"If the damages are unreasonable, i.e., if they are disproportionate to the loss actually suffered, they must be characterized as penal rather than compensatory." *Skendzel v. Marshall* (1973), 261 Ind. 226, 232, 301 N.E.2d 641.

---

1. We quote from *Skendzel v. Marshall* (1973), 261 Ind. 226, 234, 301 N.E.2d 641:

"Under a typical conditional land contract, the vendor retains legal title until the total contract price is paid by the vendee. Payments are generally made in periodic installments. *Legal* title does not vest in the vendee until the contract terms are satisfied, but equitable title vests in the vendee at the time the contract is consummated. . . ." (Original emphasis)

If the judgment is enforced, Reynolds loses $7,454.00 already paid, $2,242.37 of which represents equity; she loses the additional $1,081.71 awarded in the judgment; and she loses the real estate. By contrast, Milford's loss consists of delay in receiving payment. Certainly the damages are disproportionate to the loss.

On appeal, Milford argues that the award of $1,081.71 should be approved because she presented evidence concerning repairs which she made after forcing Reynolds to vacate the premises.

Milford sued for possession of the real estate and for recovery of delinquent payments and escrow amounts. Reynolds' trial brief reveals that Reynolds believed Milford sought recovery for waste.

At trial Milford presented testimony concerning the repairs she made, allegedly necessitated by Reynolds' failure to maintain the premises. When Reynolds took the stand, Milford steadfastly and successfully objected to her testimony concerning the condition of the property at the time Reynolds took possession. Milford insisted that Reynolds' evidence was not relevant because the issue before the court was that of liability for delinquent payments.

This court is mindful that the judgment is to be upheld if the judgment can be sustained upon any theory. *Goff v. Graham* (1974), 159 Ind. App. 324, 306 N.E.2d 758. However, in fairness to the appellant, this court cannot affirm a judgment on a theory which the appellee specifically disclaimed in the trial court. This is especially true when, as a result of such disclaimer, the appellant was denied opportunity to present her own evidence relevant to recovery or denial of recovery on such a theory.

Milford further suggests that the issue of waste or damage to the property had been resolved in her favor at the hearing held June 13, 1975. No transcript of that hearing appears in the record. The order book entry suggests that the sole issue resolved at that time was the issue of proceeding by forfeiture as opposed to foreclosure; although the issue appears to have been resolved by considering the market value of the property at that time, the order book entry leaves to speculation the reason for the decreased market value.

Milford argues that the judgment should be affirmed as representing fair rental value during the period of default. Milford relies on *Shelt v. Baker* (1922), 79 Ind. App. 606, 137 N.E. 74, for the rule that, when a conditional sales contract is forfeited due to purchaser's default, purchaser's possession thereafter is an unlawful detention and the measure of damages is the fair rental value of the property during the time of such unlawful detention.

In *Shelt*, purchasers failed to make the payments due on and after April 10, 1920. On July 1, 1920, sellers notified purchasers that unless all past-due amounts were paid on or before September 10, 1920, sellers would declare a forfeiture. Purchasers did not cure their default. The appellate court ruled that sellers could collect rental value for the property after September 10, 1920. In the case at bar, the record indicates that Milford declared a forfeiture when she filed her complaint April 22, 1975. In relying solely upon *Shelt*, Milford would be limited to receiving fair rental value for the period from April 22, 1975, to the date in June or July 1975, on which Reynolds vacated the premises.

Milford states in her brief that the only evidence of fair rental value was that evidence provided by her husband, who testified that, if the property were in good condition, it had a rental value of $140 per month. However, Mr. Milford testified at length concerning the poor condition of the property. Accordingly, no one provided evidence to prove the fair rental value of the property in its condition at the time of any unlawful detention.

The record reveals that Reynolds initially opposed the forfeiture action by arguing that Milford should proceed by foreclosure rather than by forfeiture. Reynolds lost that argument and thereby lost opportunity to redeem her interest in the property.

On appeal, Reynolds does not contest the forfeiture but only opposes the portion of the judgment reflecting delinquent monthly installments and delinquent escrow amounts.

Milford insists that she should receive not only the real estate and the payments already made but also all delinquent amounts. This court cannot affirm such an inequitable judgment which leaves the buyer on a conditional land contract current in payments but sans the property.

Accordingly, the cause is remanded to the trial court with instructions to amend the judgment by deleting the amounts for delinquent monthly installments ($902.00) and delinquent escrow payments ($179.81). When so amended, the judgment shall be affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 375 N.E.2d 265.