WILFORD H. M. MORRIS v. CHARLES E. WEIGLE AND RUTH C. WEIGLE

[No. 1278S300. Filed December 21, 1978. Rehearing denied February 15, 1979.]

*Michael J. Stapleton, Ball, Eggleston, Bumbleburg and McBride*, of Lafayette, for appellant.

*James R. Bunch, John L. Shambach, Wallace, Campbell, Bunch & Shambach*, of Covington, for appellees.

HUNTER, J. — Wilford H. M. Morris brings this cause before us on his petition for transfer. The Court of Appeals, Third District, in *Morris v. Weigle*, (1978) Ind.App., 375 N.E.2d 677, affirmed the trial court's judgment which was in favor of the Weigles. We now grant transfer. We vacate the opinion of the Court of Appeals and reverse the judgment of the trial court.

Petitioner Morris had entered into a contract for the purchase of a farm from Charles and Ruth Weigle, husband and wife, in 1966. The down payment, on the $57,000 purchase price, was $15,000 with $2,000 annual payments, plus interest on the unpaid balance. The land sale contract included the following pertinent provisions: (1) annual payments were to be made on the first of March each year; (2) time is of the essence of the contract; (3) improvements on the real estate were to be insured and kept in good repair; and (4) the Weigles, upon default and notice, could terminate the contract and keep payments made as liquidated damages. Sufficient evidence was adduced at the trial court level to establish a breach of the contract. Our inquiry upon appeal is centered upon the question of remedy. Was the trial court in error in ordering a forfeiture of the land?

At the time the Weigles repossessed the land, Morris had paid a total of $24,722.97 on the contract; of that amount, $16,922.97 was principal and $7,800.00 was interest. The trial court ruled, and the Court of Appeals affirmed, that the Weigles should retain the entire $24,722.97 as liquidated damages stemming from Morris's breach of the contract. We disagree. Morris had paid 29.7% of the contract price. This is a substantial amount. His equity in the property mitigated against the enforcement of any forfeiture provision which might have appeared in the land contract. This Court discussed, in *Skendzel v. Marshall*, (1973) 261 Ind. 226, 301 N.E.2d 641, the fact that a land sale contract is akin to a mortgage, and that, therefore, the remedy of

foreclosure is more consonant with notions of fairness and justice. We outlined, in *Skendzel v. Marshall, supra,* certain limited situations in which forfeiture would be justified:

"In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default *and* seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises. Of course, in this latter situation, the vendee will have acquired very little, if any, equity in the property. However, a court of equity must *always* approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law." *Skendzel v. Marshall,* 261 Ind. 226, 240-241, 301 N.E.2d 641, 650 [emphasis added].

The Court of Appeals justified the forfeiture on the grounds that Morris had abandoned the property. Judge Robertson made the broad statement that the trial court's findings, "when considered in their entirety, evinces abandonment on the part of Morris of the land sale contract . . . [and] [t]he record contains evidence to support those findings and thereby precludes any application of *Skendzel, supra,* as authority for reversing the trial court. . . ." *Morris v. Weigle, supra,* at 678. We have reviewed the record, and we find no such support. Rather, we are inclined to agree with the views expressed by Judge Staton in his dissent to the majority holding in this case:

"[The evidence] does not show an abandonment of the farm. The evidence shows without contradiction that Morris with the aid of a tenant farmer, planted crops on the farm and remained in possession of the farm until Weigle repossessed it for breaches of the conditional sales contract. Finding '23' of the judgment entered by the trial court confirms this evidence and the conclusion that Morris did not abandon the farm. The finding is as follows:

" '23. Defendant, or his agents, actively farmed the real estate here in question from March 1966 until it was repossessed in 1971.'

"If the trial court found that Morris remained in possession until

repossession under the contract, it would be entirely unreasonable and absurd for the trial court to conclude that the farm had been abandoned by Morris." *Id.* at 679.

As Judge Staton points out, there was no showing that Morris intended to relinquish the property. The burden of proving abandonment was Weigles' affirmative burden, and Mr. Weigle himself testified that until the point of repossession Morris maintained "custody and control" over the property. We note that until the Weigles repossessed the property, Morris had kept the real estate taxes and assumed mortgage installments current. In fact, he tendered tax and mortgage payments after the Weigles had repossessed,[1] but they were returned with the notation that payment had been received. The facts regarding late payments and the failure or inability of Morris to keep the property insured were conflicting; but, certainly, the evidence supported a finding that the contract had been breached.

---

1. Morris did not actually know that the Weigles had repossessed until long after the actual repossession had taken place. The Weigles' actions in notifying Morris of the cancellation of the contract were not above reproach. Under the contract, all notices were to be written, and the contract specifically required that written notice "shall be made by certified or registered mail, return receipt requested." The contract provided for a 30 day grace period before the vendors should notify the vendee of default. Then, "if such default is not remedied within 30 days from the date of mailing such notice, then the [vendors] may, at their option, cancel and terminate this contract and take possession of the real estate. . . ."

Morris did not timely make his March 1, 1971, payment. On April 13, 1971, the Weigles sent a certified letter to Morris claiming default and advising him of their intent to cancel the contract. Morris was in Brazil, South America, representing the United States government and Purdue University; the certified letter, which had been sent to Morris's Lafayette address, was returned unclaimed. Even though his wife never saw the contents of the letter, Morris wrote the Weigles, from Brazil, on April 20, 1971, informing them of his current address and his financial difficulties. (At this time he did not know of the Weigles' intention to cancel and terminate the contract; late payments had been accepted in the past). On May 21, 1971, the Weigles' attorney wrote Morris by ordinary mail at the Brazil address stating that the contract was terminated and that the Weigles had repossessed the farm. Morris never saw that letter until his deposition two years later. Morris found out about the repossession in very late summer or fall when he spoke to his tenant farmer (who had been retained by the Weigles) concerning crops, and the tenant informed him that the Weigles would not release the corn. Morris tendered the March 1, 1971, payment on November 5, 1971. This payment was refused by the Weigles and returned. Neither Morris nor the tenant ever received written notice of the default. Weigle himself testified that he had no way of knowing whether Morris had received *any* notice prior to the repossession.

Notwithstanding the breach, there was nothing in the record to suggest that foreclosure on the property would not have satisfactorily protected the interests of both parties. Although evidence was presented which showed that the market value of the house had decreased from $7,000 to $1,000 during the contract, the value of the entire real estate had not diminished at all. Therefore, the Weigles' security interest in the property was never endangered. Weigle testified that he *knew* that the property was worth more than the amount due under the contract. Morris was offered $65,000 for the property.

Properly applying the equitable principles outlined in *Skendzel v. Marshall, supra*, it is obvious that this is neither a case of an abandoning or absconding vendee nor a case wherein a minimal amount has been paid and the security of the property has been endangered by the acts or omissions of the vendee. Forfeiture provisions in a land contract are not *per se* to be deemed unenforceable; but, under certain circumstances they may become unenforceable because of the equity underlying any contract. The court, in the exercise of its equitable powers, does not infringe upon the rights of citizens to freely contract, but the court does refuse, upon equitable grounds, to enforce the contract because of the actual circumstances at the time the court is called upon to enforce it. Foreclosure is the appropriate remedy, a remedy which is consonant with notions of fairness and justice under the law.[2] *See Smeekens v. Bertrand*, (1974) 262 Ind. 50, 311 N.E.2d 431; *Reynolds v. Milford*, (1978) 176 Ind.App. 336, 375 N.E.2d 265; *Ogle v. Wright*, (1977) 172 Ind.App. 309, 360 N.E.2d 240; *Nelson v. Butcher*, (1976) 170 Ind.App. 101, 352 N.E.2d 106; *Bartlett v. Wise*, (1976) 169 Ind.App. 125, 348 N.E.2d 652; *Fisel v. Yoder*, (1974) 162 Ind.App. 565, 320 N.E.2d 783; *Tidd v. Stauffer*, (1974) 159 Ind.App. 570, 308 N.E.2d 415; *Goff v. Graham*, (1974) 159 Ind.App. 324, 306 N.E.2d 758; 11 Ind. Law Rev. 260 (1977); 10 Ind. Law Rev. 315 (1976); 8 Ind. Law Rev. 119, 236 (1974). *Accord, Jenkins v. Wise*, (1978) 58 Hawaii 592, 574 P.2d 1337; *Schlegel v.*

---

2. This approach provides for a "much needed humanity and consistency" within the law. See R.B. Townsend, *Secured Transactions and Creditors' Rights*, 8 Ind. Law Rev. 236 (1974). The conditional sales contract is treated as an ordinary security interest in the Uniform Commercial Code. Uniform Commercial Code § 9-201 (37).

*Hansen*, (1977) 98 Idaho 614, 570 P.2d 292; *T-Anchor Corp. v. Travarillo Assoc.*, (1975) Tex. Civ. App., 529 S.W.2d 622; *Riffey v. Schulke*, (1975) 193 Neb. 317, 227 N.W.2d 4.

We re-emphasize that forfeiture is rarely as effective a remedy as foreclosure. It is immaterial whether the vendee is living upon the property purchased under the land sale contract or whether the property is income producing for the vendee. As we stated in *Skendzel v. Marshall, supra*, "all incidents of ownership accrue to the vendee [,] . . . [and] [t]he vendee assumes the risks of loss and is the recipient of all appreciation in value." *Id.*, 261 Ind. 234. 301 N.E.2d 646. Therefore, so long as the vendee has not abandoned the property and the security of the vendor has not been jeopardized, foreclosure is the equitable remedy. The vendee retains a vendee's lien upon the sale, and once the balance owed under the contract has been paid to the vendor, the vendee may retain the proceeds from the sale. If the foreclosure does not net a sufficient amount to satisfy the vendor's remaining security interest in the property, a damage judgment for waste caused by the vendee equivalent to the amount recoverable by a mortgagee as a deficiency judgment would be appropriate. Damages awarded upon breach of a land sales contract, in excess of the foreclosure, are not otherwise appropriate.[3]

We grant transfer, vacate the opinion of the Court of Appeals, and reverse the judgment of the trial court. We remand and direct the trial court to enter a judgment of foreclosure for the entire balance due under the contract, pursuant to Ind. Rule Tr. P. 69(C) and the mortgage foreclosure statute (Ind. Code § 32-8-16-1 [Burns 1973]) as modified by Ind. Rule Tr. P. 69(C).[4] Said judgment shall include an order for the pay-

---

3. To the extent that the following cases seem to hold otherwise, they are overruled: Donaldson v. Sellmer, (1975) 166 Ind.App. 60, 333 N.E.2d 862; Finley v. Chain, (1978) 176 Ind.App. 66, 374 N.E.2d 67.

4. "TR. 69(C) requires that the procedures outlined in the above statute be applied 'without limitation' to the 'judicial foreclosure of all liens upon real estate.' We believe there to be great wisdom in requiring judicial foreclosure of land contracts pursuant to the mortgage statute. Perhaps the most attractive aspect of judicial foreclosure is the period of redemption, during which time the vendee may redeem his interest, possibly through refinancing." Skendzel v. Marshall, (1973) 261 Ind. 226, 239, 301 N.E.2d 641, 649.

ment of the unpaid balance due on said contract, together with interest at 8% per annum from the date of judgment. The order may also embrace any and all other proper and equitable relief that the court deems to be just, including the discretion to issue a stay of the judicial sale of the property, all pursuant to the provisions of Ind. Rule Tr. P. 69(C). Such order shall be consistent with the principles and holdings developed within *Skendzel v. Marshall, supra.*

Reversed and remanded with instructions.

DeBruler and Prentice, JJ., concur.

Pivarnik, J., dissents with opinion in which Givan, C.J., concurs.

## DISSENTING OPINION

PIVARNIK, J.—I dissent from the majority opinion which proposes to grant transfer, vacate the opinion of the Court of Appeals, and reverse the judgment of the trial court.

I am in total disagreement with the majority opinion in that its effect is to set aside a legal contract entered into by the parties, and to substitute contract provisions that were not contemplated or bargained for by any or all of the parties involved.

When parties enter into negotiations for sale and purchase of real estate, there are generally two contract arrangements that can be chosen to affect this transfer. One of these is the mortgage arrangement, of course, which is most usually done through a professional banking or financial institution. The purchaser receives the legal title to the property and executes a note to the financial institution, together with a mortgage or pledge of the real estate for a payment of said purchase price. In the mortgage arrangements, the seller receives his full payment and no longer has an interest in the property. Foreclosure of this mortgage is the method of recovery for a mortgagor in the event there is a default in the payment of the purchase price. This arrangement can also be entered into, of course, by individuals, but this is rarely done.

In the land contract arrangement, such as is presented by the pre-

sent case, individuals who wish to enter into an agreement to buy and sell real estate contract between themselves as to conditions of that sale and purchase. This method of contract is selected by the parties to meet the needs of their particular transaction. It has advantages to one or both of the parties because it presents terms as to down payment, interest rate, and other features of immediate transfer, different from a mortgage arrangement, which terms are more convenient or desirable for the parties at that particular time. The point I make is that mortgages and land contracts are two different types of contracts entered into by the parties openly, willingly, and to meet their own purposes. I see no need for a lengthy discussion here as to the differences in the two contract arrangements as such differences are apparent, but I would simply state that appeals courts should honor contracts as they were made by the parties and enforce them regardless of where the chips may appear to fall from this perspective.

There is no denial by anyone, including the majority, that the contract in this case was breached by the purchasers. In *Skendzel v. Marshall*, (1973) 261 Ind. 226, 301 N.E.2d 641, this court found that a land sale contract is akin to a mortgage, and that therefore the remedy of foreclosure is more consonant with notions of fairness and justice. The problem with this view is that while a land sale contract may be akin to a mortgage, it is not a mortgage, and the remedy of foreclosure is not the remedy the parties agreed to. The standards set down in both *Skendzel* and in the majority in this case, for finding that forfeiture is appropriate, require the court to take the "mechanistic approach" and examine the facts and circumstances of the parties such as the amount paid on the contract, the amount due and owing, and the apparent gain or loss of one party or the other. Neither *Skendzel*, nor the majority in this case, holds that land sale contracts are illegal, unconscionable, or contrary to law. They merely find that in some cases they will be enforced and that in some cases they will not be. Because the trial court is invited to use its own judgment as to when it would be fair and just to enforce a contract, and when it would not be, parties entering into contracts, their attorneys advising them, and trial courts hearing the matters would have difficulty in knowing what the law is in any given case.

In this case, there is an admission that there was a breach of the contract by the purchaser, that the improvements on the property had become in extreme disrepair, and that the purchaser had been absent from the property for at least two years. The trial court and the Court of Appeals found that he had abandoned the property. This was questioned by the dissenting opinion in the Court of Appeals and by the majority in this court. By examining the facts in this cause, the majority finds that Morris had paid 29.7% of the contract price, and that he had planted crops through a tenant on the property each year and therefore had not abandoned the property. If we are going to conjecture on facts as they reflect on the fortunes of the parties herein, it might be noted that the 29.7% investment of the purchaser in the property might have substantially resulted from his having received money for crops during these years, which crops were taken from the land and applied to the purchase price.

Equity has been imposed where there has been evidence of fraud, overreaching, unjust enrichment, or a result that was unsuspected or unreasonably unfair to one party or another. None of these conditions is present in this case. These parties entered into a contract which was breached by the purchasers and the seller seeks remedy through the provisions of the contract entered into by the parties. The majority opinion now offers him the remedy of foreclosure and a deficiency judgment against the party, who has not paid him under the contract up to this point and under circumstances where he will no longer have the property as security for its payment. It offers him the remedy of foreclosure on a mortgage for which he never contracted, and further offers him remedies under Ind. Code § 32-8-16-1 (Burns 1973), as modified by Ind. R. Tr. P. 69(C), which laws were written to protect those who have mere lien interests in property, and not the title under sale on a land contract.

I would grant transfer in this cause, overrule the case of *Skendzel v. Marshall*, and affirm the trial court.

Givan, C.J. concurs.

NOTE—Reported at 383 N.E.2d 341.