BEIGER HERITAGE CORPORATION,
Appellant,

v.

Mark KILBEY and the Estate Of George D. Kilbey, Deceased, Appellee.

No. 71A03–9604–CV–129.

Court of Appeals of Indiana.

Feb. 25, 1997.

Anastasia M. Mayette, Wilfred J. Mayette, Mayette & Mayette, Mishawaka, for Appellant.

James P. Knepp, William L. Wilson, Hahn, Walz, Knepp and Dvorak, South Bend, for Appellee.

## OPINION

STATON, Judge.

Beiger Heritage Corporation ("Beiger"), plaintiff below, appeals the trial court's granting of summary judgment in favor of Mark Kilbey and the Estate of George D. Kilbey (collectively "Kilbey"). Beiger presents three issues for review:

   I.   Whether the grant of summary judgment was erroneous because Kilbey did not comply with the Indiana Trial Rule 56(C) requirement of specifically designating evidence in their motion for summary judgment.

  II.  Whether the trial court erred in granting summary judgment on the issue of waste.

 III.  Whether the trial court erred in granting summary judgment on the issue of laches.

We affirm in part, reverse in part, and remand.

In 1976 George Kilbey purchased fee simple title to the Carnegie Library in Mishawaka, Indiana, from Beiger. The purchase agreement provided that George Kilbey would renovate the facade of the Carnegie Library within two years of the sale. If George Kilbey failed to do so, the purchase agreement gave Beiger the right to renovate the facade itself and receive reimbursement from George Kilbey for the expense of such renovation. The purchase agreement also gave Beiger a right of first refusal, to purchase the property on the same terms offered Kilbey by another, should Kilbey ever sell the property. Neither Kilbey nor Beiger ever repaired the facade. After George Kilbey's death, his estate solicited offers for the sale of the Carnegie Library. Beiger opted to purchase the building for $16,500 pursuant to its right of first refusal.[1]

Beiger filed suit claiming tort damages resulting from Kilbey committing waste to the library, and contract damages from Kilbey's breach of a contractual duty to restore the facade of the library. Summary judgment was granted in favor of Kilbey. Beiger contends that summary judgment should be reversed because Kilbey's motion for summary judgment did not comply with the requirements of Indiana Trial Rule 56(C), and because material factual disputes exist in its waste and contract claims.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. T.R. 56(C). The burden is on the moving party to prove there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will

---

**1.**  Whether Beiger properly exercised its right of first refusal was also a subject of litigation, decided by this court in *Beiger Heritage Corp. v. Kilbey*, 667 N.E.2d 184 (Ind.Ct.App.1996), *reh. denied*, after the present complaint was filed. We decided that Beiger did properly exercise its right of first refusal. *Id.* at 186.

consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied.* We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## I.

### Specific Designation

■ Beiger first contends that summary judgment was improper because Kilbey did not comply with the T.R. 56(C) requirement of specifically designating the evidence on which his motion for summary judgment relied. The designation of supporting evidence contained in Kilbey's motion for summary judgment was merely the "pleadings filed in this cause of action" and the "Statement of Facts and Memorandum In Support Of Defendants' Motion For Summary Judgment, including the Exhibits attached thereto." Record at 72. This designation, standing alone, would be insufficient to meet the specificity requirements of T.R. 56(C). *Plummer v. Board of Com'rs of St. Joseph County,* 653 N.E.2d 519, 522 (Ind.Ct.App.1996), *trans. denied.* But this defect is remedied by quotations from the record and the specific designation of evidence contained in Kilbey's supporting brief. *See Plummer, supra* ("[A]lthough both parties designated entire portions of the record in their respective motion and responses, more detailed references to the record were provided in the accompanying memoranda"). While not the preferred method of complying with T.R. 56(C), identification of specific evidence in the supporting brief is sufficient to apprise the court of the particular evidence relied on by the litigants. *Marshall v. Blue Springs Corp.,* 641 N.E.2d 92, 95 (Ind.Ct.App.1994) (The preferred method of designating evidence for a summary judgment motion is to succinctly list in the motion for summary judgment the material issues of fact, with a specific designation to their precise location in the record); *See also L.E. Services, Inc. v. State Lottery Com'n of Indiana,* 646 N.E.2d 334, 348 (Ind.Ct.App.1995), *trans. denied; Trout v. Buie,* 653 N.E.2d 1002, 1006 (Ind.Ct.App.1995), *trans. denied* ("As long as the trial court is apprised of the specific material on which the parties rely either in support of or in opposition to the motion then the designation requirement has been met"). The purposes of the 1991 amendments to T.R. 56(C) are to promote the expeditious resolution of lawsuits and conserve judicial resources. *Rosi v. Business Furniture Corp.,* 615 N.E.2d 431, 434 (Ind.1993). T.R. 56(C) accomplishes these purposes by reducing the scope of materials in the record which the court must examine. Apprising the court of the specific evidence supporting a motion for summary judgment is sufficient to meet these purposes; no particular format is required. *Kissell v. Vanes,* 629 N.E.2d 878, 880–81 (Ind.Ct.App.1994) (Judge Baker concurring in result with separate opinion, in which Judge Staton concurs); *Mid State Bank v. 84 Lumber Co.,* 629 N.E.2d 909, 913 (Ind.Ct.App.1994); *National Bd. of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n,* 645 N.E.2d 608, 616 (Ind.Ct.App.1994); *Swan v. TRW, Inc.,* 634 N.E.2d 794, 796, note 1, (Ind.Ct.App.1994), *trans. denied; Pierce v. Bank One–Franklin, NA,* 618 N.E.2d 16, 19 (Ind.Ct.App.1993), *trans. denied.*

## II.

### Waste

■ Beiger's contentions premised on waste are: (1) that Kilbey committed waste to the Carnegie Library; (2) that the waste was committed intentionally, entitling Beiger to punitive damages; and, finally, (3) that the waste devalued Beiger's right of first refusal. Kilbey responds that an owner vested with fee simple cannot be liable for waste.

Case law on the doctrine of waste before 1978 allowed an action for waste only to one vested with a remainder or reversionary interest. The case of *Gwaltney v. Gwaltney,* 119 Ind. 144, 21 N.E. 552 (1889), is similar to this case in that the plaintiff in *Gwaltney* sought to hold the defendant liable for waste, but the plaintiff did not have a remainder or reversion in fee simple. The plaintiff, stepson of the defendant, was heir apparent to land held in fee simple by the defendant, and sought to enjoin her from cutting standing

timber. Our Supreme Court held that waste was a cause of action available only to those with a presently existing vested interest in real estate, either as remainderman or reversioner. The plaintiff in *Gwaltney* had no such presently vested interest in the land; an inheritance, the court reasoned, is an expectancy. The plaintiff looked forward to the possibility that he may possess the land at some point in the future, but it was also possible that his fee simple expectations would never come to fruition. As the Court explained:

> a remainder-man, reversioner, or other person having an existing interest in land, may invoke the aid of a court of equity to restrain the commission of acts of waste, such as removing valuable timber from the freehold, where the timber constitutes an important element in the value of the land. Ordinarily a reversioner or remainder-man must have the legal title, or at least a present existing vested right, in remainder or reversion, in order that he may maintain the action. One thus seized of an estate, in remainder or reversion, may maintain an action for waste, ... notwithstanding the intervention of an estate for life or years. The difficulty which confronts the appellant in the present case is, he is neither a remainder-man nor reversioner, nor has he any interest whatever in the land, except a mere expectancy that he may inherit it from his stepmother in case he survives her ... The plaintiff occupies the attitude of an expectant heir, seeking to restrain the ancestor from committing waste upon an estate which the former may or may not inherit. We are not advised of any principle or authority which supports such a proceeding.

*Gwaltney, supra,* at 145–47, 21 N.E. 552 (citations omitted). *See also Wilson v. Galey,* 103 Ind. 257, 260, 2 N.E. 736 (1885) ("Yet, it has always been the law in this State, that the owner in *fee simple* of real property, *in remainder or reversion,* might recover of the life-tenant or tenant for years damages for waste committed, or might upon a proper showing enjoin the commission of further waste") (emphasis added); *Brugh v. Denman,* 38 Ind.App. 486, 488, 78 N.E. 349 (1906) ("But waste is defined to be 'a spoil or

destruction, not arising from an act of God, or of a public enemy, in houses, gardens, trees, lands, or other corporeal hereditaments, to the dishersion of him who has the *immediate remainder or reversion in fee simple* ...' ") (emphasis added).

In 1978 the Indiana Appellate Court enlarged the class of plaintiffs entitled to bring an action in waste. *Finley v. Chain,* 176 Ind.App. 66, 374 N.E.2d 67, 77 (1978), *overruled in part on other grounds by Morris v. Weigle,* 270 Ind. 121, 383 N.E.2d 341, 345 (1978). *Finley* allowed the holder of a security interest in real estate, such as a mortgagee or vendor in a land sale contract, to maintain an action for waste to the extent necessary to protect their security interest. The court defined waste more broadly than the previous cases as "the destruction, misuse, alteration, or neglect of the premises by one lawfully in possession to the prejudice of an estate or interest therein of another." *Finley, supra,* at 77, 374 N.E.2d 67. While the boundaries of waste no longer confine the cause of action only to those holding fee simple in reversion or remainder, the expansion has not been as expatious as this language might suggest. The holding of *Finley* has been restricted to its facts, extending the frontiers of waste only to those mortgagees, and vendors in land sales contracts, who have an imperilled security interest, and then only to the extent of that security interest. *See for example Morris, supra,* at 344–45 (Ind. 1978); *Marshall v. Bird,* 577 N.E.2d 254, 257 (Ind.Ct.App.1991), *trans. denied* ("A purchaser of land on contract has the right to use and enjoy the property, including the right to commit waste, unless the commission of waste injures such a part of the property so as to render the remaining debt insecure"); *Finley, supra.* As this court explained in *Finley:*

> In Indiana, the mortgagor who is in possession may exercise all acts of ownership, even to the committing of acts which might be considered waste, provided he does not 'render unsafe the debts secured by the mortgage.' Thus the mortgagor has a duty not to commit such waste.

* * *

Having recognized this right in the purchaser, as owner, to use and enjoy the property, we may not then hold him liable in damages for waste to the real estate unless the consequences of his actions injure such a part of the property so as to have rendered the remaining debt insecure.

*Id.* at 77–78, 374 N.E.2d 67 (citations omitted.)

Beiger has two interests in the Carnegie Library which it retained in the purchase agreement: (1) to enter upon the premises for the purpose of restoring the facade, at Kilbey's expense, should Kilbey fail to restore it within two years of the sale; and, (2) a right of first refusal should Kilbey ever sell the library.

The purchase agreement between Beiger and Kilbey stated that Beiger conveyed "fee simple title" to Kilbey "subject only to restrictions presently of record and those additional restrictions specified herein." Record at 33 (those additional restrictions "specified herein" are the right to restore the facade and the right of first refusal). By the plain words of the contract, Beiger sold a fee simple to Kilbey, retaining only two contractual rights.

Nor do Beiger's two contractually retained rights afford Beiger an action for waste under *Finley*. The property is not security for a debt owed by Kilbey to Beiger. Nowhere in this case does any evidence or allegation appear that Beiger was owed any money by Kilbey, or that Beiger had any security interest in the property, imperilled or otherwise. No theory therefore presents itself by which Beiger could recover damages for waste. As Beiger's interests are neither fee simple nor security interests, waste is foreclosed as an available cause of action.

The underlying rational for the theory of waste is that one vested with a limited estate should be liable for damage to those interests in the land which are not encompassed within their limited estate. If the holder does damage to something owned by another, an interest beyond the scope of the limited estate the holder enjoys, liability results. Thus a life tenant or tenant for years, seized of an estate limited in both duration and incidents of ownership, is liable for damage which extends to more than the possessory interest, affecting the fee simple. The other side of the coin is that one seized of the entire estate cannot be liable for waste. *Brugh, supra,* at 488, 78 N.E. 349 ("So that at common law waste could be committed only by a person in possession and not having the inheritance, the absolute owner being incapable of committing waste"). The fee simple, encompassing all incidents of ownership and of potentially unlimited duration, admits no room for other vested interests in the realty which may be damaged by the alleged waste. Kilbey may have sown fields with salt, but the fields being his own, no one else has standing to complain of it.

An examination of the interests retained by Beiger also demonstrates that the interests are not of a nature that could be damaged by waste. Considering first the right to restore the facade, Beiger argues that it has lost value in this right because more extensive and expensive repair is now required than would be necessary had Kilbey restored the structure years ago. But once triggered by the passage of two years without restoration by Kilbey, the right does not wax or wane in proportion with the amount of repair required. Beiger's right is a right to effect repairs, and whether more or less repair is needed does not bear on this right. As stated in the purchase agreement, Beiger was "entitled to enter upon the subject property and to effect such repairs, restoration, and renovation as it, in its sole discretion, feels reasonably necessary to restore said facade to its original condition, ..." Record at 93–94. The need for additional repair in no way restricts the right to repair; Beiger contracted for the right to repair the facade, not for a guaranteed ceiling on what cost and effort would be required to repair the facade.

Beiger's other right retained in the purchase agreement is the right of first refusal. As the contract states, if Kilbey "at any time ... desires ... to sell ... the subject property, then ... [Beiger] shall have ... the first option, right and privilege of purchasing the subject property upon the same terms

and conditions as those upon which [Kilbey] desires, or will be compelled, to sell the subject property to a third party, ..." Record at 57–58. Beiger contends that this right was devalued by increased renovation costs it incurred after exercising its right of first refusal, costs which would not have been necessary but for Kilbey allowing the building to lapse into a dilapidated condition. But the right Beiger retained in the contract of sale is the right to purchase the property on the same terms offered by another, and not the right to purchase the building in any specific condition. Beiger was not compelled to purchase the building, and the costs of renovation were not foisted upon Beiger. If Beiger believed that the cost of refurbishing the library was excessive, it could have declined to exercise its right of first refusal. The right to make the purchase, however, remained always intact.

The trial court's granting of summary judgment in favor of Kilbey on the claims for waste is affirmed.

### III.

#### Laches

■ The complaint also contains a contract claim, seeking damages for breach of Kilbey's contractual duty to restore the facade. Kilbey invokes the equitable doctrine of laches and Beiger's failure to mitigate damages to bar Beiger's claim.

"[L]aches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it." *Williams v. Rogier*, 611 N.E.2d 189, 196 (Ind.Ct.App. 1993), *trans. denied.* An affirmative defense, laches has three elements as applied in civil cases: (1) inexcusable delay in asserting a right; (2) implied waiver from knowing acquiescence in existing conditions; and, (3) circumstances resulting in prejudice to the adverse party. *Matter of Geisler*, 614 N.E.2d 939, 940 (Ind.1993).

Kilbey emphasizes Beiger's sixteen year delay in pressing its contractual right. Kilbey bought the library in 1976. Two years elapsed without Kilbey performing the required renovation, activating Beiger's right to repair the facade in 1978. When this action was filed in 1994, neither Kilbey nor Beiger had refurbished the library facade. Thus sixteen years passed, between 1978 and 1994, when Beiger could have repaired the facade and billed Kilbey the cost, but did not.

The argument on laches by both parties is vague, failing to set out the elements of laches and correlate relevant facts to the law, but our interpretation of the briefs is that Beiger disputes the element of acquiescence in known existing conditions resulting in a waiver of neglected rights. Beiger presented affidavits from two corporate officers stating that over the years Beiger actively pursued its contractual right by striking various deals with Kilbey in which Beiger granted a reprieve from enforcing the contract in order to stave off dire financial consequences to Kilbey, in exchange for which Beiger received assurances from Kilbey that he would indeed perform the repairs to the facade.[2] The affidavits present facts indicating that Beiger actively pursued its right to repair the facade, refuting the essential element of acquiescence in known conditions. Since the element of acquiescence is necessary to the laches defense, and the factual question presented by Beiger's affidavits may be determinative of that element, it is a material factual issue. The presence of a material factual question on an issue entitles the non-moving party to submit their cause to the trier of fact, precluding summary judgment as to that issue.

Kilbey's argument on mitigation of damages is similarly focused on Beiger's inaction during the sixteen years when it could have repaired the facade. "[T]he principle of mitigation of damages addresses conduct by an injured party that aggravates or increases the party's injuries." *Wiese–GMC, Inc. v. Wells*, 626 N.E.2d 595, 599 (Ind.Ct.App.1993), *trans. denied.* The contention for mitigation

2. We note that this testimony may be inadmissible under Indiana's dead man's statute, IND.CODE § 34–1–14–6. Neither at the trial court nor on appeal did Kilbey object to the affidavit testimony pursuant to T.R. 56(E). Failure to object waives the issue, and this court will consider the affidavit testimony on appeal. *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind.1990); *LeMaster v. Methodist Hosp.*, 601 N.E.2d 373, 376 (Ind.Ct. App.1992), *reh. denied.*

of damages is that Beiger failed to exercise the right specified in the contract as a remedy in case Kilbey did not repair the facade. The affidavits presented by Beiger, however, address exactly the question of whether or not such neglect is attributable to Beiger. As we must construe all evidence in favor of the nonmoving party in a summary judgment motion, we cannot conclude that Kilbey is entitled to summary judgment on the issue of mitigation of damages. Summary judgment is reversed with respect to laches and mitigation of damages.

Affirmed in part, reversed in part, and remanded.

GARRARD and BARTEAU, JJ., concur.