**T-ANCHOR CORPORATION, Appellant,**

v.

**TRAVARILLO ASSOCIATES, a California Limited Partnership, Appellee.**

No. 8563.

Court of Civil Appeals of Texas, Amarillo.

Oct. 31, 1975.

Stalcup, Johnson, Meyers & Miller, David J. White, Dallas, Miller, Sanders & Baker, Dee Miller, Amarillo, for appellant.

Stokes, Carnahan & Fields, O. P. Fields, Amarillo, for appellee.

ELLIS, Chief Justice.

This is a suit for permanent injunction against interference with the right of possession claimed by plaintiff-appellant, T-Anchor Corporation, a Texas corporation, pursuant to a forfeiture provision contained in an installment contract for the sale of real property designated as Travelodge West Motel, in Amarillo, Texas, entered into between T-Anchor as seller and Young Properties Corporation, a California corporation, as buyer. After trial without a jury, the trial court rendered judgment against T-Anchor that it take nothing by its suit, and for defendant-appellee, Travarillo Associates, a California limited partnership, the assignee of Young Properties, on its cross-action for possession of the motel property. T-Anchor brings this appeal from the judgment of the trial court. Affirmed.

The right to forfeiture which T-Anchor claims and upon which it bases its suit for injunction is contained in paragraph XIII of the contract of sale. After setting out that time shall be of the essence, the contract further provided that if the buyer fails to pay any of the installments or breaches any of the conditions of the contract, the seller shall have the right, after giving written notice to the buyer, to declare the contract forfeited and cancelled and of no further force and effect.

Appellant asserts its entitlement to exercise its contractual right of forfeiture by reason of default on the part of the buyer and its assignee in making the required installment payments. We note that, among other contentions, appellee insists that appellant's claim for possession and title based on termination or forfeiture of the contract was not raised at the trial level and cannot properly be advanced for the first time and considered in this appeal. However, after reviewing the entire record, including the pleadings and the evidence admitted, we have determined to consider appellant's asserted rights concerning the alleged forfeiture and the injunctive relief sought.

After trial on the merits, the trial court rendered its judgment which decreed that: (1) certain interlocutory orders be dissolved which had restrained and enjoined Travarillo Associates, the assignee of Young Properties, the original purchaser, from the taking possession of the Travelodge West Motel, the subject of the contract of sale entered into on April 4, 1973; (2) Travarillo is the owner and holder of all rights of "purchaser" as formerly held by Young Properties under the contract of sale; (3) the contract of sale is in full force and effect, and Travarillo with its acquired rights as purchaser is entitled to possession of the Travelodge West Motel described therein; (4) certain monies tendered into the registry of the court by Travarillo be paid to T-Anchor, the seller, and that the balance in the registry be paid to Travarillo; (5) the only real parties in interest in this case are T-Anchor and Travarillo; and (6) all other parties named as defendants have no interest in this controversy and are dismissed from the suit. Subsequent to the judgment, the trial court ordered that the agreement of the parties with respect to the payment and receipt of the monies paid out from the registry of the court would not constitute any agreement to the judgment entered in this cause by T-Anchor nor in any manner affect T-Anchor's notice and right of appeal.

Upon request, findings of fact and conclusions of law were made by the trial court. Since this appeal is determinable from competing equitable considerations necessarily based upon a series of acts and conduct of the parties, we shall set out what we deem to be the court's significant factual findings and legal conclusions.

Among other facts found by the trial court were that: on April 4, 1973, T-Anchor, the seller, entered into a contract for the sale of the Travelodge West Motel in Amarillo, Texas, with Young, the buyer; as a part of the same transaction, Young and Travarillo entered into an agreement of purchase and sale of the motel whereby Travarillo acquired all of Young's interest

in the motel; T–Anchor consented to the assignment of the contract interest from Young to Travarillo upon the terms that Travarillo could acquire all of Young's interest in the motel if Young should default in its contract payments to Travarillo; and on the same date, April 4, 1973, Young was placed in possession of the motel under a leaseback agreement with Travarillo.

Although there was evidence of prior late payments and acceptance thereof by T–Anchor, the trial court found that beginning with the payment due in November, 1973, Young defaulted in its monthly payments to T–Anchor in the amount of $10,812.17 each, and in each of its monthly lease payments to Travarillo in the amount of $6,471.00. The court further found that pursuant to a proceeding brought by Young, on October 31, 1973, a bankruptcy court in California entered its order restraining all creditors of Young from accelerating or attempting to accelerate any indebtedness of Young, from enforcing any rights or remedies provided in any agreements with Young, and from cancelling any such agreements or commencing any kind of forfeiture proceeding against Young; and that throughout the restraining period ordered by the bankruptcy court, Young remained in possession of the motel, but made no payments to T–Anchor or to Travarillo.

Additionally, the court found that: T–Anchor defaulted in the first and second lien payments which it was required to make to Home Savings and Loan Association of Waterloo, Iowa, and to Amarillo National Bank of Amarillo, Texas, under the sale contract with Young; both T–Anchor and Travarillo appeared in the bankruptcy proceeding seeking relief from the bankruptcy court's restraining order, T–Anchor seeking cancellation of the sales contract and Travarillo seeking cancellation of the lease agreement and possession of the motel; T–Anchor, in its pleadings in bankruptcy court, fully recognized that Travarillo was the assignee of Young and held all of the interest of Young in the motel and that

Young was only a defaulting lessee at the time of the bankruptcy; on April 2, 1974, the bankruptcy court entered an order directing Young to vacate the motel ten days after the date of the order, and dissolving the restraining orders against T–Anchor and Travarillo on or about April 12, 1974; as of the date of the dissolution of the restraining orders, Travarillo was the owner of all of the interest of Young in the sales contract with T–Anchor; immediately after the bankruptcy court entered its order on April 2, 1974, the general partner of Travarillo tendered full payment of all delinquent land sales contract installments to T–Anchor and otherwise tendered performance of all delinquent obligations of Young to T–Anchor to make performance current under the contract; and T–Anchor wrongfully refused the tender by Travarillo and assumed possession of the motel as Young vacated.

The trial court further found that: the money contributed to the purchase of the motel was principally that of Travarillo in the amount of $300,000; T–Anchor received as cash consideration for the motel $137,500; and some $200,884.32 was required to bring the obligations of Young current under the land sales contract, including delinquent interest and penalty due from T–Anchor to the first lienholder plus attorneys' fees paid by T–Anchor in attempting to secure performance of the contract or possession, all of which, ought equitably to be reimbursed to T–Anchor.

Also, the court made findings that: since T–Anchor was in possession of the motel from April 20, 1974, to the time of trial on the merits, it had realized from motel operations a profit of $113,097.09 after expenses; after deducting the profits of T–Anchor from the amount required to bring the contract obligations current, the sum of $87,787.23 was found to be owing to T–Anchor by Travarillo; Travarillo paid into the registry of the trial court the sum of $100,000, a sum sufficient to make T–Anchor whole under the land sales contract; and

receipt of $87,787.23 thereof by T–Anchor would fully adjust the equities of the parties and all accounts between them up to September 5, 1974, the date of the trial on the merits.

Additionally, the trial court found that: it would be exceptionally harsh and unjust to forfeit the monies contributed by Travarillo to the motel project and an unjust enrichment to T–Anchor by allowing forfeiture of the purchaser's rights under the land sales contract in the face of unusual circumstances where a debtor in bankruptcy was continued in possession of the property while making payments to no one; it would be unreasonable to refuse Travarillo the right to pick up the obligations of Young once the bankruptcy restraining order was terminated; upon payment to T–Anchor of $87,787.23 from the registry of the trial court Travarillo would be entitled to possession of the motel as owner and holder of the land sales contract of April 4, 1973, and the contract is in full force and effect with all payments due thereunder made current through the month of September, 1974.

The conclusions of law by the trial court were that: (1) Travarillo is entitled to equitable relief from forfeiture of the purchaser's rights under the land sales contract; (2) the land sales contract is in full force and effect and that Travarillo is the owner of all the rights of purchaser thereunder; (3) T–Anchor is entitled to recover from the registry of the trial court $87,787.23; (4) Travarillo is entitled to possession of the motel; and (5) T–Anchor is not entitled to any injunctive relief.

T–Anchor predicated its appeal upon thirty-two points of error. For convenience we shall discuss T–Anchor's points of error in the same groupings as in its brief.

■ In its first two points T–Anchor contends that the judgment of the trial court denying forfeiture of the contract cannot be supported without findings of waiver and default on the part of T–Anchor. T–Anchor requested amended and

additional findings of fact and conclusions of law which would have established and held that T–Anchor did not waive its right under the contract to forfeiture and that through the effective date of forfeiture, T–Anchor fulfilled its obligations under the contract. Both of these theories of waiver and default by T–Anchor as requested are inconsistent with and contrary to the findings of fact and conclusions of law made by the trial court. The trial court need not make findings of fact or conclusions of law which are in conflict with the original findings and conclusions made. Neither is the trial court required to make findings of fact on evidentiary matters as distinguished from controlling matters. *Plaza Co. v. White*, 160 S.W.2d 312 (Tex.Civ.App.—San Antonio 1942, writ ref'd); *Wade v. Taylor*, 228 S.W.2d 922 (Tex.Civ.App.—Amarillo 1949, no writ). The findings of fact and conclusions of law requested by T–Anchor either are evidentiary if no forfeiture was found to exist prior to a possible waiver or default by T–Anchor, or, if they are controlling matters, then such requested findings and conclusions are in conflict with the findings of fact and conclusions of law originally made by the trial court that no forfeiture occurred. Further, in view of the holding of the trial court that Travarillo is entitled to equitable relief from forfeiture, a finding of waiver or default by T–Anchor is not necessary to support the judgment. Points of error numbers 1 and 2 are overruled.

■ In points of error numbers 3 through 11, T–Anchor contends that the tender of performance by Travarillo was deficient and thus cannot operate to prevent forfeiture of the contract of sale. Points of error numbers 3, 5–7, and 9–11 all concern the amount of the tender of money made by Travarillo. T–Anchor contends that a tender of the amount necessary to bring the contract payments current is not tender of a sufficient amount to put Travarillo in possession of the motel as its owner. Such a contention by T–Anchor is

predicated upon its assertion that the contract was, indeed, forfeited; therefore, T–Anchor contends that the only amount that can be tendered by Travarillo to put Travarillo in possession of the motel is the balance of the unpaid purchase price under the contract of sale. However, the holding of the trial court was that the contract was in full force and effect so that the equity of redemption mentioned in paragraph XIII of the contract was not required to be invoked. Thus, Travarillo was not required to pay the balance of the unpaid purchase price since it had never forfeited the contract. By bringing the contract obligations up to date, Travarillo made T–Anchor whole under the contract of sale which was held to be in full force and effect.

Further, in points of error numbers 3–11, T–Anchor contends that the equities are in its favor to allow a forfeiture and not in favor of Travarillo to deny forfeiture. The trial court found that it would be exceptionally harsh and unjust to forfeit the monies contributed to the motel project and unjust enrichment to T–Anchor to allow forfeiture of Travarillo's rights under the contract in the face of unusual circumstances, namely, that the debtor in bankruptcy, Young, was continued in possession of the motel while paying no one. The trial court held that the order of the bankruptcy court prevented forfeiture of the contract until April 12, 1974. The trial court further held that since Travarillo was tendering performance in full prior to April 12, 1974, it would be unreasonable to refuse Travarillo the right to pick up the contract obligations of its assignor Young upon termination of the restraining order of the bankruptcy court. The trial court found that T–Anchor defaulted on its first and second lien payments because of the restraining orders which continued Young in possession without requiring Young to make contract payments to T–Anchor.

■■ It is our opinion that the evidence supports the holding of the trial court that Travarillo was entitled to equitable relief from forfeiture. It is an established rule of law that forfeitures are disfavored. Although parties may contract to provide for forfeiture upon default, where equities are shown which justify a continuation of the contract rather than forfeiture of it, the forfeiture will be prevented. *Stevenson v. Lohman,* 218 S.W.2d 311 (Tex.Civ.App.—Beaumont 1949, writ ref'd); *Baines v. Clinton Park Development Co.,* 224 S.W.2d 729 (Tex.Civ.App.—Galveston 1949, no writ). In view of the disfavor with which the law looks upon forfeitures in a contract for the sale of land and in the light of the unusual chain of events which eventually left Travarillo as the buyer under the contract ready, willing and able to perform, we overrule points of error numbers 3–11.

■ T–Anchor contends in point of error number 12 that the trial court erred in holding that the net profits of the motel earned during a period of possession and operation by T–Anchor were the property of Travarillo as owner of complete title to the motel. T–Anchor presupposes that a forfeiture has, in fact, occurred. The trial court held that a forfeiture was prevented by the restraining order of the bankruptcy court. Therefore, possession of the motel by T–Anchor was during a period when Travarillo was entitled to possession, and, under the holding of the trial court that the contract is in full force and effect, Travarillo is, and T–Anchor is not, entitled to the profits of the operation. It is our opinion that the holding of the trial court is sustained by the evidence and the equities of this particular situation. Point of error number 12 is overruled.

■ In points of error numbers 13–15, T–Anchor contends that it was error to hold that default in the payment of monthly installments by Young commenced with the failure to make the November, 1973 payment. T–Anchor points to undisputed testimony that payments were late in more than one month prior to November, 1973, and that notices of default were sent to Young. The trial court made no express

finding of waiver by T–Anchor. We recognize that where express findings of fact are made by the trial court, independent issuable facts may not be supplied by extension of the express findings. *Duncan v. Willis,* 157 Tex. 316, 302 S.W.2d 627 (1957); *McKenzie v. Carte,* 385 S.W.2d 520 (Tex. Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.). However, the same evidence that would support a finding of waiver by T–Anchor supports the trial court's application of equitable principles which would efficiently prevent forfeiture of the contract sale. Testimony by Boyce Box, president of T–Anchor, revealed that T–Anchor ultimately received purchase money installments up to the payment due in November, 1973, and that an oral extension of time until October 11 was agreed to by T–Anchor after the September, 1973 payment was made late. This testimony tends to show that T–Anchor considered the contract as continuing after making its initial gesture with respect to forfeiture, and supports the granting of equitable relief to prevent forfeiture. Points of error numbers 13–15 are overruled.

In points of error numbers 16–22, T–Anchor next contends that the trial court erred in failing to find certain facts since such findings are, as stated in T–Anchor's brief, "supported by the uncontroverted evidence." The findings requested by T–Anchor relate to the defaults, notices of such defaults sent to Young and absence of tender of performance by Young, prior to November, 1973, as claimed by T–Anchor to establish forfeiture of the contract and termination of Young's and, therefore, Travarillo's interest under the contract.

■ Even if the specific findings requested by T–Anchor had been made, the result reached by the trial court would not necessarily be changed. In fact, the record reveals that there is evidence of conduct by T–Anchor showing an intent not to terminate the contract but to continue in a contractual relationship. Even after giving notice concerning forfeiture, T–Anchor accepted late payments of purchase price installments although Young failed to comply with its agreement to bring the delinquent payments to a current status or to vacate the motel. The findings requested by T–Anchor even if made would not, in the light of all the evidence, compel a conclusion of law by the trial court that the contract was forfeited and cancelled in October, 1973, as contended by T–Anchor. The trial court need not make findings of fact on mere evidentiary matters with respect to the ultimate issue. *Plaza Co. v. White,* supra; *Wade v. Taylor,* supra. Points of error numbers 16–22 are overruled.

■ With respect to points of error numbers 23–28 we believe that the requested findings of fact on which they are grounded relate only to evidentiary matters not required to be included in the trial court's findings of fact. The facts they seek to establish would show that Travarillo failed to make various payments to T–Anchor prior to trial. Such facts, even if included in the trial court's findings of fact, would not compel a result different from that reached by the trial court since there was evidence that Travarillo made tender of performance to bring its contract obligations current early in April, 1973, just prior to dissolution of the Young bankruptcy restraining order. Points of error numbers 23–28 are overruled.

The testimony reveals that after this suit was filed and hearing had on temporary injunction, Travarillo attempted to put the motel under the jurisdiction of the bankruptcy court by filing for an arrangement under Chapter XI of the Bankruptcy Act. By its points numbered 29–32, T–Anchor contends it was error for the trial court to fail to find that by this action, Travarillo, in effect, failed to do equity and effectively withdrew its tender of any sums to T–Anchor, resulting in the defeat of any right to prevent forfeiture.

The trial court made no findings of fact with respect to the Chapter XI proceeding initiated by Travarillo. There is much con-

troversy about the reasons for filing the petition for arrangement under Chapter XI. T–Anchor insists that Travarillo sought to repeat the actions of Young, and thus remain in possession of the motel without being required to make payments to T–Anchor. Travarillo insists, on the other hand, that by filing a bankruptcy petition it was only "trying to litigate in every conceivable form" to protect its rights. Travarillo contends that it wanted to use the Chapter XI proceeding "to get a court to make a determination that [it] had a right to cure because [it] had substantial equities" it was in danger of losing. Morgan Jones, a lawyer for Travarillo, testified that it was upon his advice that the Chapter XI proceeding was initiated, asserting that insolvency is not presumed in a Chapter XI proceeding. The only evidence before us on the issue of solvency is that Travarillo was solvent.

The purpose of Chapter XI of the Bankruptcy Act is to provide a quick and economical means of facilitating simple compositions among general creditors who have been deemed by Congress to need only the minimal disinterested protection provided by the Chapter. *In Re Texas Consumer Finance Corporation,* 480 F.2d 1261 (5th Cir. 1973). Further, the Congressional intent in establishing Chapter XI is to provide for an efficient and orderly method by which the claims of unsecured or common creditors of a debtor might be satisfied without resort to general bankruptcy. 9 Remington on Bankruptcy § 3565, p. 32 (Supp.1975).

In any event, we do not think that the trial court was required to make a finding that Travarillo filed a petition under Chapter XI because such a finding would be evidentiary. *Plaza Co. v. White,* supra; *Wade v. Taylor,* supra. Moreover, the evidentiary finding would not necessarily compel a different conclusion by the trial court regarding such ultimate and vital issue of termination of the contract.

Further, it is our opinion that the case of *Smith v. Owen,* 43 Tex.Civ.App. 51, 107 S.W. 929 (1908, writ ref'd), cited in appellant's brief in support of its contention that tender had been withdrawn, is not applicable to the facts in the instant case. In that case the vendee pleaded defenses inconsistent with his tender of the purchase money; the court held that the plea of limitation title precluded the adjustment of any equities in the vendee's favor that might allow him to pay the unpaid balance of the purchase money and hold the land. Id. at 930. The court stated in *Smith v. Owens,* supra, there were no equities pleaded or proved that would entitle the vendee to defeat the remedy of rescission of the contract sought in that case.

In the instant case we have no pleading by Travarillo of any theory inconsistent with its tender of whatever amount the trial court determined to be owing. Further, in the instant case, we find evidence to support a judgment in favor of Travarillo upon equitable grounds. By way of cross-action Travarillo invoked the equity jurisdiction of the trial court to deny cancellation of the contract.

Here, Travarillo had paid into the registry of the trial court which, in turn, has paid to T–Anchor, an amount making Travarillo current in its obligations. The Chapter XI proceeding initiated by Travarillo was dismissed, with no change in possession resulting from the proceeding. T–Anchor's conduct with reference to the forfeiture that it claims occurred on October 11, 1973 was not consistent with such claim of forfeiture. By accepting late payments and by making a subsequent agreement for cure of defects T–Anchor indicated that it continued to consider the contract in force. This is a case where the seller recognized the contract as still in force even after default. *Hoover v. General Crude Oil Co.,* 147 Tex. 89, 212 S.W.2d 140 (1948); *Tom v. Wollhoefer,* 61 Tex. 277 (1884). Although it may be contended that T–Anchor may have made moves toward some definite action to exercise its right of forfeiture, yet there is evidence of probative force to support a finding that T–Anchor had not unequivo-

cally declared the contract cancelled at the time Young went into bankruptcy on October 31, 1973.

 Whether the seller has effectively exercised an option of forfeiture for default in payment depends not upon the number of hours or days that have elapsed since the default in question, but upon whether the circumstances are such that the buyer has, by the conduct of the seller, been led reasonably to believe that strict application of the right of forfeiture will not be insisted upon, for the time being. *A. L. Carter Lumber Co. v. Saide,* 140 Tex. 523, 168 S.W.2d 629 (1943). Suspension of the right of forfeiture depends upon the facts in each case. 77 Am.Jur.2d, Vendor and Purchaser, § 589, p. 716; 91 C.J.S. Vendor & Purchaser, § 137, pp. 1076–1077, § 144.

T–Anchor cites *Stevenson v. Lohman,* supra, in support of its contention that equitable relief should be denied. It is noted that the buyer in *Stevenson* made no tender of all or part of the contract payments until after suit in trespass to try title was filed. The buyer advised the seller that he would make no further monthly payments, and the seller treated the contract as abandoned. Travarillo has tendered performance to bring the contract obligations up to date before this suit was filed in April, 1974. In the instant case there is evidence that subsequent to the time when T–Anchor contends it first declared a forfeiture, it treated the contract as continuing and not as abandoned. Also, in *Stevenson,* the court significantly pointed out that the vendor's right of possession upon default could be defeated by the vendees "upon pleading and proving such facts as would make it inequitable to enforce it." In view of the equities pleaded and proved here, points of error numbers 29–32 are overruled.

We recognize that this is a case that requires the weighing of competing equities and that the equities do not lie wholly in favor of either party. However, we hold that the trial court's judgment, based on a balancing of equities, is supported by the record, and that the findings requested by T–Anchor, even if established, would not compel the trial court to reach a different result.

The judgment of the trial court is affirmed.