NO. 07-03-0485-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 25, 2005

_____

DENNIS WATTS, INDIVIDUALLY AND D/B/A SENIOR BENEFIT PLANS
AND D/B/A PROFESSIONAL FINANCIAL SERVICES OF LUBBOCK;
AND NATHAN GRIMES, INDIVIDUALLY AND D/B/A
PROFESSIONAL FINANCIAL SERVICES OF LUBBOCK, APPELLANTS

V.

QUEEN ANNIE LAWSON, APPELLEE

_____

FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY;

NO. 9424; HONORABLE JOHN R. HOLLUMS, JUDGE

_____

Before REAVIS and CAMPBELL, JJ. and BOYD, S.J.[1]

**MEMORANDUM OPINION**

Appellant Dennis Watts challenges the trial court's judgment following a bench trial

that appellee Queen Annie Lawson recover damages in the amount of $143,556, plus

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.

prejudgment interest and attorney's fees from Watts, individually and d/b/a Senior Benefit Plans and d/b/a Professional Financial Services of Lubbock and Nathan Grimes, individually and d/b/a Professional Financial Services of Lubbock, jointly and severally.[2] Presenting nine points of error, Watts contends the trial court erred in entering judgment against him because the findings of fact are not supported by legally sufficient evidence or alternatively the evidence is factually insufficient to support Lawson's claims of (1) negligence, (2) fraudulent conduct, (3) negligent misrepresentation, (4) Deceptive Trade Practices Act violations, and (5) breach of fiduciary duty or grounds of vicarious liability for the acts of Nathan Grimes on the theory of (6) joint enterprise or joint venture, (7) conspiracy, (8) agency or authorized conduct, and (9) the trial court erred in calculating the appropriate postjudgment interest.

Grimes, who had training in the insurance industry and financial planning, moved to Lubbock in 1979, and commenced working as a licensed insurance salesman for Watts in 1996. Grimes met Lawson in April 1998 when he contacted her regarding the purchase of an annuity which involved changing an existing annuity to another annuity. In connection with that matter, she also met Watts, who accompanied Grimes on one occasion. Lawson's meeting with Watts in 1999 was the only time she ever met him involving any business. Before 1999, Watts did business as an independent insurance agency under the assumed name Senior Benefit Plans, which concentrated on the sale of insurance policies and products. As a general agent, Watts recruited Grimes and other

---

[2]Nathan Grimes did not file a notice of appeal, individually or d/b/a Professional Financial Services of Lubbock and seeks no relief herein.

licenced insurance agents to associate with his agency as independent contractors. During the year of 2000, Watts had one secretary as an employee who was paid a salary and worked under his control. Also, at that time, Grimes, who was licensed and had contracts with insurance companies, worked out of Watts's office but Watts did not supervise or control Grimes or fix his compensation or hours of work. Grimes paid Watts $150 per month as rent but did not share commissions on sales except for a joint case.

After Watts was contacted by Jerry Neal and referred to a marketing firm known as TSI, Nino Cimini, a TSI representative, met Watts at his office and introduced Watts and Grimes to an investment program. The investment opportunity contemplated that pay telephones would be offered for sale with an agreement under which they would be leased by the purchaser for a fixed monthly rental payment thereby providing the investor a fixed 14% annual return on the investment. According to the plan, pay telephones would be operated and serviced by an organization known as Phoenix Telecom Rental. After considering the investment opportunity, on November 3, 1999, Watts signed a written agreement as a distributor for TSI, and Nathan Grimes signed a separate and independent associate agreement with TSI on November 2, 1999. Watts's arrangements with the individual salesmen who worked in his office was similar to the sale of insurance. In marketing the pay telephone investments, the salesmen used data provided by people with whom they had contacts. Watts received 16% commissions on the sales he personally made and 6% override from the company on sales by agents who worked out of his office.

In June 2000, Grimes met with Lawson about the investment opportunity in pay telephone leases and told her the return would be 14.1%. As a result of the meeting on June 13, 2000, Lawson withdrew $147,000 from other funds and invested in the pay telephone lease back opportunity. After one of the principal firms was declared bankrupt, Lawson filed suit to recover her losses. By the suit, she sought to recover damages on grounds of negligence, fraud, violations of the Deceptive Trade Practices Act, breach of fiduciary duty, and negligent misrepresentation. Also, she alleged that Watts was vicariously liable for the conduct of Grimes on grounds of joint enterprise or joint venture, conspiracy, and principal and agent or authorized conduct. After the trial court signed its judgment, findings of fact and conclusions of law were made.

We must first consider the appropriate standard of review. Findings of fact in a bench trial have the same force as a jury's verdict upon jury questions. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex.Civ.App.--Houston [14th Dist.] 1977, writ ref'd n.r.e.). However, findings of fact are not conclusive when a complete statement of facts appears in the record, if the contrary is established as a matter of law, or if there is no evidence to support the findings. Middleton v. Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex.App.--Houston [14th Dist.] 1985), *writ ref'd n.r.e.*, 699 S.W.2d 199 (Tex. 1985) (per curiam). When the trial court acts primarily as a fact finder, the findings of fact are reviewable for factual and legal sufficiency under the same standards that are applied in reviewing evidence supporting a jury's answer. Zieben v. Platt, 786 S.W.2d 797, 799

(Tex.App.--Houston [14th Dist.] 1990, no writ). *See also* W. Wendell Hall, *Standards of Review in Texas*, 34 ST. MARY'S L.J. 1, 183 (2002).

When an appellant challenges both the legal and factual sufficiency of the evidence, the appellate court should first review the legal sufficiency challenge. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981); Koch Oil Co. v. Wilber, 895 S.W.2d 854, 862 (Tex.App.--Beaumont 1995, writ denied). An appellant attacking the legal sufficiency of an adverse finding on which he had the burden of proof must show on appeal that a contrary finding was established as a matter of law. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). The appellate court reviews the entire record for any evidence that supports the adverse finding, while disregarding all evidence and inferences to the contrary. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 276 (Tex.App.–Amarillo 1988, writ denied). If there is no evidence to support the finding, the reviewing court must review the entire record to determine if the contrary proposition was established as a matter of law. McGalliard v. Kuhlmann, 722 S.W.2d 694, 696-97 (Tex. 1986).

An appellant challenging the factual sufficiency of an adverse finding where he had the burden of proof must show on appeal that the finding was against the great weight and preponderance of the evidence. Gooch v. Am. Sling Co., 902 S.W.2d 181, 184 (Tex.App.–Fort Worth 1995, no writ). If there is some probative evidence to support the finding, it must be upheld. ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997). The court should only set aside an adverse finding if, in light of all the evidence, the

5

evidence which supports the finding is so weak as to be clearly wrong and manifestly unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

In addition, although findings of fact are reviewable for legal and factual sufficiency, an attack on the sufficiency of the evidence must be directed at specific findings of fact rather than at the judgment as a whole.  In re M.W., 959 S.W.2d 661, 664 (Tex.App.--Tyler 1997, no pet.).  The rule has often been otherwise stated that if the trial court's findings of fact are not challenged by a point of error on appeal, they are binding upon the appellate court.  Northwest Park Homeowners Ass'n, Inc., v. Brundrett, 970 S.W.2d 700, 704 (Tex.App.--Amarillo 1998, pet. denied); Carter v. Carter, 736 S.W.2d 775, 777 (Tex.App.--Houston [14th Dist.] 1987, no writ).  However, a challenge to an unidentified finding of fact may be sufficient for review if it is included in the argument of the issue or point, or if after giving consideration to the nature of the case, the underlying applicable legal theories, and the findings of fact provided, the specific finding(s) of fact which the appellant challenges can be fairly determined from the argument.  *See* Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982) (citing Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361 (1960)).

Addressing the points of error in logical rather than sequential order, we first consider Watts's fourth point of error by which he contends the trial court erred in entering judgment against him on the basis of the Texas Deceptive Trade Practices Act because the findings of the court related to this theory of recovery were not supported by legally

6

sufficient evidence, or alternatively, the evidence was factually insufficient to support such findings. We disagree.

By unchallenged findings one, two, and four, the court found that Watts and Grimes (1) convinced Lawson to withdraw $147,000 from annuity contracts and induced her to place the money into a pay telephone leasing scheme through Phoenix Telecom, Inc., (2) they knew for several months before Lawson made her investment that the leasing company was sustaining substantial financial losses and/or was not in a good financial condition, and (4) they did not inform Lawson of the financial condition of the leasing company. Then, also as material to Watts's vicarious liability for Grimes's actions, the court found:

> (8) Dennis Watts and Nathan Grimes acted together and conspired together to engage in the sale of pay telephone leases and shared commissions on consummation of any sales.
>
> (13) Dennis Watts and Nathan Grimes jointly and severally and by way of their joint venture or conspiracy, engaged in false, misleading, or deceptive acts or practices by making representations to Queen Annie Lawson . . . .

Watts partially challenges the finding regarding "joint and several" determination; however, the remaining findings of joint venture and false, misleading, or deceptive acts are not challenged.

Grimes argues we are not bound by finding 13 because the trial court did not make findings of supporting elements of joint venture. However, the trial court was not required to make findings of mere evidentiary matters with respect to the ultimate issue. T-Anchor

7

Corp. v. Travarillo Associates, 529 S.W.2d 622, 628 (Tex.Civ.App.--Amarillo, 1975, no writ). Indeed, a trial court should not make findings on every disputed fact, but only those having some legal significance to an ultimate issue in the case. Stucky Diamonds v. Harris County Appraisal, 93 S.W.3d 212, 213 (Tex.App.--Houston [14th Dist.] 2002, no pet.).

In addition, the findings of fact and conclusions of law contained the following instruction:

> [i]f any of the items labeled Conclusions of Law are Findings of Fact, they should be so considered.

By items 10 and 11, the trial court concluded that Watts and Grimes engaged in false, misleading, or deceptive acts or practices that were a producing cause of damages to Lawson. Then, by conclusion 16, it found that Watts and Grimes engaged in a joint enterprise.[3] Accordingly, following *T-Anchor* and *Stucky*, we conclude the items identified as conclusions 10, 11, and 16 constitute unchallenged findings of fact for purposes of our review.

In Shoemaker v. Estate of Whistler, 513 S.W.2d 10, 14 (Tex. 1974), the Court adopted the formulation of joint enterprise. Upon a finding of joint enterprise, each party thereto is the agent of the other and holds each liable for a tortious act of the other. *Id*.

---

[3]*See* Comm. on Pattern Jury Charges, State Bar of Texas, Texas Pattern Jury Charges--General Negligence and Intentional Personal Torts, PJC 7.11 (2002) recommending the submission of only one question for joint enterprise with accompanying definitions.

*See also* Texas Department of Transportation v. Able, 35 S.W.3d 608, 613 (Tex. 2000). As stated in section 491 of the Restatement (Second) of Torts, vicarious liability under joint enterprise for the acts of others is consistent with the fundamental purposes of our tort system to deter wrongful conduct, shift losses to responsible parties, and fairly compensate deserving victims. *See* Roberts v. Williamson, 111 S.W.3d 113, 118 (Tex. 2003).

In addition to the events and evidence summarized above, documentary evidence included a promotional leaflet provided to Lawson by Senior Benefit Plans of Lubbock describing the investment opportunity as providing a great return, cash flow, liquidity, safety, guaranteed, no market risk, no interest fluctuation, and competitive income. The leaflet concluded:

> **WE** *have looked closely at the alternatives that are available to **our*** clients in this period of low interest earnings and volatile market place. Fortunately, **our** diligence has paid off. **We** now have such an opportunity!

Similarly, a copy from the web site page named Watts, Grimes, and three others as consultants affiliated with Senior Benefit Plans. The use of plural pronouns is some evidence of joint enterprise. Further, the events within 90 days following the investment by Lawson demonstrate the unreliability of the leaflet and promotional material. Because the findings of joint venture are supported by some evidence and being unchallenged, the findings are binding on the appellate court. *See Brundrett*, 970 S.W.2d at 777. Watts's fourth point of error is overruled.

By his ninth point of error, Watts contends the trial court erred in calculating the rate of postjudgment interest on the judgment awarded to Lawson. The trial court awarded postjudgment interest at a rate of ten percent per annum beginning September 8, 2003, the date the judgment was rendered. Watts maintains the appropriate interest rate under section 304.003(c)(2) of the Texas Finance Code at the time of the judgment was five percent. We agree. The postjudgment interest rate is determined each month and begins accruing on the date the judgment is rendered. Tex. Fin. Code. Ann. §§ 304.003(b), 304.005(a) (Vernon Supp. 2004-05). The applicable postjudgment interest rate for September 2003 was five percent (5%). 28 Tex. Reg. 7473 (2003) (filed Aug. 19, 2003) (Tex. Consumer Credit Comm'r). Accordingly, Lawson's ninth point of error is sustained.

Because our disposition of Watts's fourth point of error will require that the judgment be affirmed, our consideration of his remaining issues is pretermitted. Having sustained Watts's ninth point, we modify the judgment to bear five per cent interest, and as modified, the trial court's judgment is affirmed.

Don H. Reavis
Justice

Campbell, J., concurring.

10

NO. 07-03-0485-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MAY 25, 2005

_____

DENNIS WATTS, INDIVIDUALLY AND D/B/A SENIOR BENEFIT PLANS
AND D/B/A PROFESSIONAL FINANCIAL SERVICES OF LUBBOCK;
AND NATHAN GRIMES, INDIVIDUALLY AND D/B/A
PROFESSIONAL FINANCIAL SERVICES OF LUBBOCK, APPELLANTS

V.

QUEEN ANNIE LAWSON, APPELLEE
_____

FROM THE 110TH DISTRICT COURT OF FLOYD COUNTY;

NO. 9424; HONORABLE JOHN R. HOLLUMS, JUDGE
_____

Before REAVIS and CAMPBELL, JJ. and BOYD, S.J.[4]

**CONCURRING OPINION**

I concur in the Court's judgment, though I cannot join in its opinion finding that the

judgment of the trial court can be sustained on the theory that Watts and Grimes were

--------------------------------------

[4]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.

engaged in a joint enterprise. Like the relationships among the participants in *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513 (Tex. 2002), the evidence here shows that Watts and Grimes had different agreements and understandings, encompassing their ongoing insurance business as well as their business of marketing telephone investments. There may be more than one way in which the "enterprise" involved here could be defined. *See id*. at 529. Regardless how it is defined, though, I believe that the element of a "community of pecuniary interest" is missing. *See id*. at 531-34.

The trial court's judgment can be sustained, though, on a civil conspiracy theory. Watts argues on appeal that the trial court's findings of fact contain none of the elements required to establish a civil conspiracy, and all the elements cannot be presumed, under Rule of Civil Procedure 299. The elements of a civil conspiracy are (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Tex., Inc.*, 975 S.W.2d 546, 553 (Tex. 1998).

By finding of fact 8, the court found that Watts and Grimes "acted together and conspired together to engage in the sale of pay telephone leases and shared the commissions on consummation of any sales."[5] That finding includes at least the elements of a combination and an object to be accomplished. Too, the court's conclusion of law 17 states, "On the occasion in question, Dennis Watts and Nathan Grimes were part of a

---

[5]As the Court's opinion notes, Watts received a commission on sales of the telephones made by Grimes.

12

conspiracy that damaged Queen Annie Lawson." That conclusion, which perhaps could as well be denominated a finding of fact, tracks the Pattern Jury Charge question on civil conspiracy.[6] Rule 299 does not render the judgment insupportable on a civil conspiracy theory.

The object of a civil conspiracy may be a lawful act that is to be accomplished by unlawful means. *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement. *Id. See Schlumberger Well-Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856-57 (Tex. 1968). I agree with the Court's holding that the trial court's conclusion that Watts and Grimes violated the Deceptive Trade Practices Act is supported by legally and factually sufficient evidence. The evidence further shows that the means Grimes employed in marketing the telephones to Mrs. Lawson were the means that he and Watts agreed they would employ in their marketing efforts. It is undisputed that Grimes told Lawson the telephone investment would return 14.1% per annum. That statement appears in the promotional leaflet referred to in the Court's opinion, which carried the name of Watts's company Senior Benefit Plans of Lubbock, as well as in other literature provided by Phoenix Telecom and used by Watts and Grimes. The trial court's findings support a judgment holding Watts vicariously liable for

---

[6]Comm. on Pattern Jury Charges, State Bar of Texas, Texas Pattern Jury Charges–Business, Consumer, Insurance & Employment, PJC 109.1 (2003). *See Gutierrez v. Gutierrez*, 791 S.W.2d 659, 667 (Tex.App.–San Antonio 1990, no writ) (noting analogy between findings of fact and jury questions, and that it "would be strange indeed to require judges to make findings in minute detail while requiring jury questions to be framed broadly").

Grimes's actions with respect to Lawson, based on a civil conspiracy, and the evidence is legally and factually sufficient to sustain those findings.


James T. Campbell
Justice