**John REEDER, Appellant/Cross–Appellee**

v.

**Billie Brewer CURRY, Individually and as Successor to W.C. Brewer, Deceased, Trinity Industries, Inc., Trinity Materials, Inc. and American National Bank of Texas, Appellees/Cross–Appellants.**

No.  05–07–01062–CV.

Court of Appeals of Texas, Dallas.

Aug. 25, 2009.

Rehearing Overruled Oct. 8, 2009.

---

Ted B. Lyon, Jr., David W. Townend, Ted B. Lyon & Associates, P.C., Mesquite, TX, Kirk L. Pittard, F. Leighton Durham, Durham & Pittard, LLP, Dallas, TX, for Appellant.

David M. Pruessner, Law Office of David M. Pruessner, Dorothea L. Vidal, Vidal & Mack, P.C., Dallas, TX, Mark J. Calabria, Calabria & Calabria, Kaufman, TX, for Appellee.

Before Justices WRIGHT, FITZGERALD, and MAZZANT.[1]

## OPINION

Opinion By Justice FITZGERALD.

John Reeder appeals the summary judgment against him on his claims for breach of contract, tortious interference with contract, trespass, and declaratory judgment. He also appeals the trial court's judgment against him for $638,132.93 for committing waste. Billie Brewer Curry, individually and as successor to W.C. Brewer, deceased, Trinity Industries, Inc., Trinity Materials, Inc., and American National Bank of Texas appeal the trial court's refusal to enter judgment for them on their claim against Reeder for conversion. On appeal, Reeder brings twelve issues and cross-appellants bring five issues. We affirm the trial court's judgment in part and reverse and remand the remainder of the cause to the trial court for further proceedings.

## BACKGROUND

On December 8, 1995, Reeder and Curry entered into a transaction to sell land belonging to Curry to Reeder. They signed two documents. One was an earnest money contract for the sale of the property for $650,000, with the closing scheduled for the later of July 15, 1996 or seven days after any objections to the title were cured. So that Reeder could take immediate possession of the property, the parties also signed a contract for deed in which Curry promised to deliver a deed for the property at the closing. The contract for deed provided that Reeder would be in default if he failed to make a payment of principal or interest "at the time the same shall fall due." In the event of default under the contract for deed, the contract provided that Curry could take action to collect the unpaid amount, declare the entire unpaid debt due and owing and seek to collect it, or she could terminate the agreement and keep as liquidated damages the amounts Reeder had paid under the contract. If Curry decided to terminate the contract for deed due to Reeder's default, Reeder would have to vacate the property immediately. The contract for deed would expire on the closing of the sale of the property. Both contracts stated the property would be paid for by Reeder making a down payment consisting of four payments totaling $100,000 at set times through July 15, 1996, a second lien note for $100,000 paid over five years, and "[t]he balance of the purchase price of $450,000 shall be financed by the seller at 8% per annum to be paid by Buyer by monthly payments of $4300.47 beginning August 15, 1996 and ending July 15, 2011."

Reeder took immediate possession of the property and began strip-mining and selling the sand and gravel on the property.[2] Reeder made the down payment of $100,000 and paid the second lien note of

---

1. The Honorable Amos L. Mazzant was a member of the original panel and participated ·in the submission of this case. Since submission, Justice Mazzant has accepted appointment as a United States Magistrate Judge and did not participate in this opinion.

2. Appellees assert that Curry was unaware of Reeder's intention to remove and sell the sand and gravel. However, Curry testified in her deposition that Reeder "wanted to use it for sand and gravel, but he told me he wouldn't be working it for about two years before he started on getting the sand and gravel out. . . ."

$100,000. Reeder also made all the monthly payments of $4300.47 until September 2004. Before November 2001, Reeder also made extra payments totaling about $8000. The closing contemplated by the contracts never occurred.

In November 2001, Curry borrowed $65,000 from American National Bank of Texas and assigned the contract for deed and the earnest money contract to the bank as collateral. Curry informed Reeder about the assignment and instructed Reeder to make the payments to the bank instead of to Curry. Reeder made the payments to the bank thereafter. In 2002, Reeder sent the bank IRS form "1099–MISC" identifying the interest he paid as income to the bank. The bank wrote Reeder and told him the interest went to Curry and that the bank merely held the contracts as collateral. The bank instructed Reeder to report the funds as Curry's income.

In 2004, the IRS issued levy notices against Curry to collect unpaid taxes. In July 2004, the IRS issued a notice of levy to Reeder requiring Reeder to pay to the IRS any amounts he owed to Curry. Reeder contacted the bank about the levy notice, which told him not to send money but to inform the IRS that he would next owe "$4330.47" [sic] on a sales contract to Curry on August 15, 2004 "subject to assignment of $1,386.77 per month" to the bank. Riter Hulsey, the chairman of the board of the bank, testified that he expected the IRS to send Reeder instructions about whether to send the payments to it or to the bank, but the IRS did not give Reeder any further instructions. Despite the notice of levy, Reeder made the payment to the bank for August 2004 but after the fifteenth of the month. In September, however, Reeder did not make the payment to the bank, nor did he send the money to the IRS pursuant to the notice of levy. Reeder testified that Curry called him on September 23, 2004 and asked if he had paid the bank for that month.

"I responded to her that I did not make a payment. Curry replied that she was glad I did not make the payment because if I had, it would have been confiscated by the IRS because the IRS seized her bank account at the Bank. During this conversation, she never requested that I make a payment for September 2004, and she said nothing about wanting to cancel our contract or forfeit my interest in the Property."

Meanwhile, Trinity Industries and Trinity Materials owned property neighboring the Curry–Reeder tract. They wanted to remove the sand and gravel on their property, but they lacked access to a road. The Trinity companies sought to purchase Reeder's interest in the property, but they could not reach an agreement. The companies then approached Curry and told her that if she could regain all rights in the property, they would be interested in purchasing it.

On October 15, 2004, after Reeder failed to make the September and October payments, Curry's counsel sent Reeder notice that Curry was canceling the contract for deed because Reeder (1) failed "to timely pay the amount of $4330.47 [sic] due September 15, 2004 and October 15, 2004" and (2) allowed "the property to be destroyed, wasted and harmed due to mining operations." On October 21, Reeder sent a check to the bank for $8600.94 for the September and October 2004 payments. The bank returned the check stating Curry did not wish to accept it "in that the agreement is in default and has been terminated." On November 1, Reeder's attorney sent a letter to the bank and to Curry demanding that the notice of cancellation of the contract for deed be withdrawn and that they accept Reeder's earli-

er check for $8600.94. On November 11, Reeder sent the bank a check for the November payment. On November 17, Curry sold the property to Trinity Materials for $245,000 cash. That same day, the bank returned Reeder's check for the November payment, stating its loan to Curry had been paid and it had released its lien on the property. Reeder's attorney then tendered the checks to Curry's attorney, but he returned them, stating Curry no longer claimed or held any interest in the property.

Reeder filed this suit on November 30, 2004 seeking specific enforcement and damages for breach of the contract for deed and the earnest money contract, trespass, common-law and statutory fraud, imposition of an equitable trust, tortious interference with contract, declaratory judgment, and permanent injunctive relief. During the lawsuit, Reeder paid into the registry of the court the payments due under the contract. Trinity Materials filed a counterclaim against Reeder for waste and conversion from Reeder's removal of sand and gravel from the property. Appellees obtained summary judgments on all of Reeder's claims. The court then awarded possession of the property to Trinity and ordered Reeder to vacate the property by September 30, 2006.

Trinity's waste and conversion claims were submitted to a jury, which found Reeder committed waste but not conversion and awarded Trinity Materials $638,132.93 as damages for waste. The jury also found Reeder proved a road on the property was not a public road. Finally, the jury found Trinity Materials' reasonable and necessary attorney's fees "with respect to the breach of contract declaratory judgment action" were $191,684.45. The trial court rendered judgment in accordance with the jury's verdict except that the jury's finding regarding the nonpublic nature of the road was not included in the judgment. The court also awarded possession of the property to Trinity.

## SUMMARY JUDGMENT

In his first three issues, Reeder contends the trial court erred in granting appellees' motions for summary judgment. The standard for reviewing a summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). After the movant has established a right to summary judgment, the burden shifts to the nonmovant to present evidence creating a fact issue. *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 881 (Tex.App.-Dallas 2007, no pet.).

## FORFEITURE UNDER THE CONTRACT FOR DEED

In his second issue, Reeder asserts appellees failed to establish as a matter of law their ground that he could not recover on his claims because Curry was entitled to exercise the right of forfeiture under the contract for deed. The contract for deed stated that if Reeder caused an event of default, including "[f]ailure ... to make any payment of the purchase price or payment of interest as hereinabove provided at the time the same shall fall due," Curry had the right "[t]o terminate the agreement and retain as liquidated damages any payments theretofore made hereunder by Purchaser, to compensate Seller for breach of this Contract and for rental and deterioration of the Property," "without

any notice or demand whatsoever." On October 15, 2004, Curry's counsel sent Reeder a declaration that the contract for deed was terminated and Reeder's interest forfeited for two reasons: failing to make the payments due September 15 and October 15, 2004 and for "[a]llowing the property to be destroyed, wasted and harmed due to mining operations."

In their motion for summary judgment, appellees asserted that Reeder was not entitled to recover on his causes of action because appellees conclusively proved Reeder materially breached the contract for deed by making the August 2004 payment after the fifteenth of the month and by not making the September and October 2004 payments until after Curry declared the contract forfeited. Appellees did not assert the destruction, waste, and harm to the property as a ground for forfeiture in their motion for summary judgment.[3]

■ In an executory contract for the sale of land, such as the contract for deed in this case, the superior title remains with the seller until the purchaser fulfills its part of the contract. *See Stevenson v. Lohman,* 218 S.W.2d 311, 313 (Tex.Civ. App.-Beaumont 1949, writ ref'd). If the purchaser defaults under the contract, the seller is entitled to possession of the property. *Id.* at 314. However, the rescission of a contract for deed with the forfeiture of the purchaser's payments and interest in the property is a harsh remedy not favored by the courts. *See id.; Tom v. Wollhoefer,* 61 Tex. 277, 281 (1884); *T– Anchor Corp. v. Travarillo Assocs.,* 529 S.W.2d 622, 627 (Tex.Civ.App.-Amarillo 1975, no writ). Therefore, the seller's right to retake possession of the property under the contract's forfeiture provision may be defeated by the purchaser "pleading and proving such facts as would make it inequitable to enforce it." *Stevenson,* 218 S.W.2d at 314; *see T–Anchor Corp.,* 529 S.W.2d at 627.

In their motion for summary judgment, appellees asserted that Reeder could not show the forfeiture of the property and the cancellation of the contract for deed were inequitable and that they established that the forfeiture and cancellation were not inequitable. Reeder asserted in his response to the motion for summary judgment that enforcement of the forfeiture and cancellation provisions under the contract for deed for his failure to make the September and October payments would be inequitable due to the circumstances following the IRS's issuance of the notice of levy.

■ Reeder argues that this situation is analogous to that in *T–Anchor Corp. v. Travarillo Associates,* where the trial court found enforcement of the forfeiture and cancellation provisions in a contract for deed was inequitable, and the court of civil appeals affirmed. *T–Anchor Corp.,* 529 S.W.2d at 626–27. In that case, T– Anchor sold a motel to Young Properties in a land-sales contract containing forfeiture and cancellation provisions similar to those in this case. *Id.* at 624. Most of the money for the transaction was provided by Travarillo Associates. Young then transferred all its interest in the motel to Travarillo, which leased the motel back to Young. *Id.* at 625. T–Anchor agreed to the contract's assignment to Travarillo on the terms that Travarillo could acquire all of Young's interest if Young defaulted on

---

**3.** Appellees urge us to overrule Reeder's issues concerning the granting of appellees' motion for summary judgment because the jury found Reeder had committed waste. However, the supreme court has held "that a summary judgment cannot be affirmed on grounds not expressly set out in the motion or response." *Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993).

its payments to Travarillo. *Id.* About seven months later, Young defaulted on the contract payments to T–Anchor and its lease payments to Travarillo and filed for bankruptcy protection. *Id.* The bankruptcy judge issued a restraining order prohibiting Young's creditors, including T–Anchor and Travarillo, from cancelling any contracts or commencing forfeiture proceedings against Young. *Id.* About five months later, the bankruptcy court ordered Young to vacate the motel, and the court lifted the restraining order on T–Anchor and Travarillo. At that point, Travarillo was the owner of all of Young's interest in the sales contract with T–Anchor. Travarillo immediately tendered full payment of all the delinquent payments on the land-sales contract; however, T–Anchor refused the tender and assumed possession of the motel as Young vacated it. *Id.* Travarillo paid into the registry of the court a sum sufficient to make T–Anchor whole under the land-sales contract. *Id.* at 625–26. The trial court found "it would be exceptionally harsh and unjust to forfeit the monies contributed by Travarillo to the motel project and an unjust enrichment to T–Anchor by allowing forfeiture of the purchaser's rights under the land sales contract." *Id.* at 625. The trial court concluded that Travarillo was entitled to equitable relief from forfeiture of the purchaser's rights under the land-sales contract and that the contract was not canceled. The trial court awarded possession of the motel to Travarillo and awarded the funds in the registry of the court to T–Anchor. *Id.* The court of appeals affirmed, stating that the trial court's holding was supported by the evidence and the equities of that particular situation. *Id.* at 627.

Like Travarillo, Reeder asserts circumstances outside his control interfered with his ability to make the September and October payments. In applying the ratio-nale of *T–Anchor* to this case, a key issue is whether Reeder's failure to make the September and October payments was reasonable under the circumstances following the issuance of the IRS notice of levy on Curry. In support of their position that Reeder's failure to pay was not reasonable under the circumstances, and, thus, that cancellation of the deed and forfeiture of the property was not inequitable, appellees relied on the amended affidavit of William D. Elliott, an attorney certified by the State Board of Legal Specialization as a specialist in the legal practice areas of tax law and estate planning and probate. Elliott stated in the affidavit, "Upon receiving the Notice of Levy, Plaintiff's [Reeder's] clear duty was to pay the IRS." Reeder provided affidavits of two of his own experts. Darrell Wootton, a banker with "significant experience with lending transactions, Internal Revenue Service levies, and the operations of banks in Texas," stated, "Under the circumstances, Reeder was justified in waiting to receive further instructions from the IRS before surrendering his payments or part of his payments to the IRS. Also, it would not have been reasonable to expect Reeder, in the face of the Levy, to continue making payments to Curry and/or the Bank." Reeder also attached to his summary judgment response the affidavit of Chris Dellinges, a C.P.A., who had "worked extensively in the area of responses to IRS Notices of Levy and the responsibilities of third parties upon receipt of such Notices." Dellinges stated in his affidavit,

> It was reasonable for Reeder to postpone delivery of the payments to allow time for the taxpayer (Curry) to obtain a release from the IRS or for the Bank itself to secure a partial release of the Levy.... Under the circumstances, it was reasonable for Reeder to continue to hold the funds.... Reeder holding

the subsequent monthly payments prior to receiving a release from the IRS is in compliance with the direction of the Levy, which contemplates a reasonable opportunity to investigate before paying the funds over to the IRS should a release not have been forthcoming.

These affidavits raise a fact question on the specific equitable issue of whether Reeder's failure to pay the September and October payments was reasonable under the circumstances. Reeder had made regular payments to Curry for eight years totaling about $600,000, and, like Travarillo in *T–Anchor*, he continued to make them into the registry of the court after the filing of the litigation in this case. Just as outside legal forces in *T–Anchor* (the bankruptcy court's restraining order and the effect of the bankruptcy filing) interfered with the payment of the amount due under the land—sales contract, so also evidence in this case shows an outside legal force—the IRS notice of levy and the confusion it created—interfered with Reeder's making the payments under the contract for deed.

Appellees argue they established as a matter of law that forfeiture and cancellation were not inequitable regardless of whether Reeder's failure to pay in September and October was reasonable in light of the IRS notice of levy. Appellees assert the equities are against Reeder because, although he paid Curry and the bank over $670,000 under the contract, he earned over six million dollars in royalties for the sand and gravel strip-mined from the property. Appellees also argue the equities do not support Reeder because he has committed waste on the property by strip-mining the sand and gravel without following land-reclamation procedures leaving the property a "wasteland." Appellees do not explain how these facts, even if conclusively proven, establish that the forfeiture of the property under the contract for deed was not inequitable.

Because a genuine issue of material fact exists on whether Reeder's failure to make the payments for September and October was reasonable in light of the circumstances, we conclude that appellees failed to establish as a matter of law that the forfeiture of the property under the contract for deed was not inequitable. Accordingly, the trial court erred in granting appellees' motion for summary judgment on Reeder's claims for specific performance and damages for breach of the contract for deed. We sustain Reeder's second issue.

## THE EARNEST MONEY CONTRACT

In his third issue, Reeder contends the trial court erred in granting appellees' motion for summary judgment on his claims for specific performance and damages for breach of the earnest money contract. Reeder alleged Curry breached the earnest money contract by failing to close and that he is entitled to specific performance of the contract or to damages for the value of the property or for lost profits on the extraction and sale of the minerals on the property. Appellees moved for summary judgment on these causes on the grounds that (a) Reeder breached the earnest money contract by failing to supply a survey of the property as required by the contract and (b) because the affirmative defenses of the statute of limitations, laches, and waiver barred the claims. Reeder also alleged that Curry breached the contract by failing to provide the survey and an abstract of title or title policy and that appellees' affirmative defenses do not apply.

### Terms of the Earnest Money Contract

The portions of the earnest money contract relevant to the parties' arguments are as follows:

6. TITLE POLICY, ABSTRACT AND SURVEY:

☒ A. TITLE POLICY: Seller shall furnish to Buyer at Buyer's expense an Owner Policy of Title Insurance (the Title Policy) issued by Safeco Land Title of Kaufman (the Title Company) in the amount of the Sales price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject only to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:.... Within 20 days after the Title Company receives a copy of this contract Seller shall furnish Buyer a commitment for Title Insurance (the Commitment).... If the Commitment or Complete Abstract are not delivered to Buyer within the specified time, the time for delivery shall be automatically extended up to 15 days. Buyer shall have 10 days after the receipt of the Commitment required by this contract to object in writing to matter disclosed in the Commitment....

☐ B. ABSTRACT OF TITLE: ...

☒ C. SURVEY REQUIRED: (Check one box only)

☐ (1) Within 15 days after buyer's receipt of a survey plat furnished to a third-party lender at the expense of ☐ Buyer ☒ Seller, Buyer may object in writing to any matter shown on the plat which constitutes a defect or encumbrance to title.

☒ (2) Within 30 days after the effective date of this contract, Buyer may object in writing to any matter which constitutes a defect or encumbrance to title shown on a survey plat obtained by Buyer at the expense of ☐ Buyer ☒ Seller.

☐ (3) ...

Buyer's failure to object under 6A, 6B or 6C within the time allowed shall constitute a waiver of Buyer's right to object.... If objections are made by Buyer, or any third party lender, Seller shall cure the objections within 20 days after the date Seller received them and the Closing Date shall be extended as necessary. If objections are not cured by the extended Closing Date, this contract shall terminate and the Earnest Money shall be refunded to Buyer unless Buyer elects to waive the objections.

\* \* \*

9. CLOSING: The closing of the sale shall be on or before July 15, 1996, or within 7 days after objections to title have been cured, whichever date is later (the Closing Date); however, if financing or assumption approval has been obtained pursuant to Paragraph 4, the Closing Date shall be extended up to 15 days only if necessary to comply with lender's closing instructions (for example, survey insurance policies, property repairs, closing documents). If either party fails to close this sale by the Closing Date, the non-defaulting party shall be entitled to exercise the remedies contained in Paragraph 15. At closing Seller shall furnish tax statements showing no delinquent taxes, a Supplemental Abstract when applicable, and a General Warranty Deed conveying good and indefeasible title showing no additional exception to those permitted in Paragraph 6.

\* \* \*

15. DEFAULT: If Buyer fails to comply with this contract, Buyer shall be in default. Seller may either (a) en-

force specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the Earnest Money as liquidated damages, thereby releasing the parties from this contract. If Seller is unable without fault to make any non-casualty repairs or deliver the Commitment or the Complete Abstract within the time allowed, Buyer may either terminate this contract and receive the Earnest Money as the sole remedy or extend the time for performance up to 15 days and the Closing Date shall be extended as necessary. If Seller fails to comply herewith for any other reason, Seller shall be in default and Buyer may either (a) enforce specific performance, seek such other relief as may be provided by law, or both or (b) terminate this contract and receive the Earnest Money, thereby releasing both parties from this contract.

## Statute of Limitations

Appellees asserted that Reeder's suit to enforce the earnest money contract was barred by the statute of limitations, laches, and waiver because he did not bring suit to enforce the contract within four years or other reasonable period from the "Closing Date" defined in the contract. Reeder argues the closing date was never reached because Curry never provided him a title commitment or abstract.

■ Appellees assert Reeder's claim for breach of contract for the failure to close was barred by the statute of limitations because Reeder's suit, filed in 2004, was more than four years after the contract's scheduled closing date of July 15, 1996, which, it appears, is the date appellees assert the cause of action accrued. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 2002). Reeder asserts a genuine issue of material fact exists as to the closing date. Under paragraph 9, the closing date was "on or before July 15, 1996, or within 7 days after objections to title have been cured, whichever date is later...."[4] Reeder argues that because he was never provided a title policy or commitment as required by paragraph 6, there was nothing to which he could object, and no objections that could have been cured. Thus, he argues, the period of "7 days after objections to title have been cured" was never reached, and his claim was within four years of the closing date. However, under paragraph 15 of the contract, Reeder's remedy for Curry's failure to provide a title commitment was limited to (1) cancellation of the contract and return of his $500 earnest money or (2) extension of "the time for performance up to 15 days and the Closing Date shall be extended as necessary." The earnest money is still on deposit with the escrow agent, so Reeder did not choose cancellation of the contract and return of his earnest money. Thus, under the contract, Reeder's only remedy for Curry's untimely delivery of the title commitment was a possible extension of the closing date by up to fifteen days, which would have extended the closing date to no later than July 30, 1996. Thus, Reeder's 2004 suit for specific performance and damages stemming from Curry's failure to close under the earnest money contract accrued by July 30, 1996. Because Reeder did not bring suit within four years of the accrual, his suit for breach of the

4. Curry had to provide Reeder with the title commitment within twenty days of the filing of the contract with the title company, and Reeder had fifteen days from his receipt of the title commitment to make any written objection to the title. Neither side states when the contract was filed with Safeco Title Co.

earnest money contract was barred by limitations.

We conclude the trial court did not err in granting appellees' motion for summary judgment on Reeder's claims for specific performance and damages for breach of the earnest money contract. We overrule Reeder's third issue.

## DECLARATORY JUDGMENT

Reeder asserts the trial court erred in granting appellees' motion for summary judgment on Reeder's request for declaratory judgment because the declarations he requested concerned the parties' rights and obligations under the contract for deed and the earnest money contracts. Therefore, Reeder asserts, the same arguments applicable to the motion for summary judgment concerning the contracts apply to the requested declarations.

■ Because we have held the trial court erred in granting appellees' motion for summary judgment as to Reeder's claim for breach of the contract for deed but did not err in granting appellees' motion for summary judgment as to Reeder's claim for breach of the earnest money contract, we also hold the trial court erred in granting appellees' motion for summary judgment as to Reeder's requested declarations concerning the parties' rights and obligations under the contract for deed but did not err in granting the motion for summary judgment on the requested declarations concerning the earnest money contract.

## REMAINING ISSUES

■ Reeder also challenges the grant of appellees' motions for summary judgment on his causes of action for permanent injunctive relief and trespass. Appellees based their motions for summary judgment regarding these causes of action on the trial court's granting of the motion for summary judgment asserting that Curry lawfully terminated the contract for deed forfeiting Reeder's rights to the property. Because we have held the trial court erred in granting summary judgment on that issue, we likewise reverse the trial court's summary judgment as to these causes of action.

Reeder also brought causes of action for common-law and statutory fraud, imposition of an equitable trust, negligent misrepresentation, and tortious interference with contract. However, his brief on appeal does not assert the trial court erred in granting appellees' motions for summary judgment as to these causes of action. Accordingly, we must affirm the summary judgment on those causes of action. *See Smith v. Tilton*, 3 S.W.3d 77, 83, 87 (Tex. App.-Dallas 1999, no pet.) (appellant's failure to challenge ground of summary judgment on appeal waived any error in granting summary judgment on that ground).

Appellees' claims against Reeder for waste and conversion were based on Trinity's having title to the property through the sale of the property from Curry to Trinity. That sale, in turn, depended on Curry having the right to declare the property forfeited under the contract for deed. Because we have determined that the trial court erred in granting appellees' motion for summary judgment on appellant's claims based on the forfeiture of the property, we must reverse the judgment as to appellees' claims, and we need not reach the issues presented by both sides concerning the trial of those claims.

## CONCLUSION

We affirm the trial court's judgment granting summary judgment on Reeder's causes of action for breach of the earnest money contract, the declaratory judgment action concerning the earnest money con-

tract, imposition of an equitable trust, statutory and common-law fraud, negligent misrepresentation, and tortious interference with contract. In all other respects, we reverse the trial court's judgment and remand the cause for further proceedings.